PRENSA INSULAR DE PUERTO RICO, INC., ET AL., Petitioners, *v.* RAFAEL DE J. CORDERO, AUDITOR OF PUERTO RICO, Respondent.

No. 429. Argued February 24, 1947.—Decided March 26, 1947.

*Antonio Ayuso Valdivieso, pro se, Miguel Guerra-Mondragón,* and *Guillermo Cintrón Ayuso* for petitioners. *Luis Negrón Fernández, Acting Attorney General, Carlos Santana Becerra* and *J. Rivera Barreras, Assistant Attorneys General,* for respondent.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

The original jurisdiction of this Court has been invoked by Prensa Insular de Puerto Rico, Inc., a domestic corporation, and Antonio Ayuso Valdivieso, in a petition for a peremptory writ of mandamus against the Auditor of Puerto Rico to compel him to permit petitioners to inspect certain records and documents which are in his custody by virtue of his office.

Prensa Insular de Puerto Rico, Inc., owns and publishes "El Imparcial", a' daily newspaper of general circulation throughout Puerto Rico. Antonio Ayuso Valdivieso is a lawyer, journalist, taxpayer to the Insular Treasury on real property, President of the said corporation and Editor of "El Imparcial". As such Editor, he is in control of the editorial and news-reporting policy of the said paper.

By a letter of February 2, 1947, Ayuso Valdivieso, in his capacity as a taxpayer, President of Prensa Insular de Puerto Rico, Inc., and Editor of "El Imparcial", requested the Auditor of Puerto Rico, Rafael de J. Cordero, to inform him: (*a*) whether Concrete Industries, Inc., and Caguas Develop-

ment Co. had sold construction materials to the People of Puerto Rico, to any Municipality, Authority, Agency, or dependency of the Insular Government; and (b) if such sales had been made, to specify the amounts, dates and value thereof, and that since this information was needed for publication purposes and was of public interest, to send it at the earliest possible time.

Petitioners alleged that they have a special interest and right in obtaining this information in order to keep the citizens of Puerto Rico informed in detail of the disbursements of public funds and, if they should discover any irregularities or inefficiency in the expenditures of public funds, to apprise the public thereof by editorials, and to advocate the adoption of sound legislative and administrative measures for a better administration of the public funds of Puerto Rico.

The Auditor did not answer this letter and on February 6, Ayuso Valdivieso, through Notary J. Pedro Miranda, required the Auditor to permit the examination of the orders of payment, vouchers, bills, and other documents related to the transactions consummated, from April 17, 1945, to February 6, 1947, between the Government of Puerto Rico, its Agents, Municipalities, etc., and Concrete Industries, Inc., and Caguas Development Co. The Auditor stated to the Notary that he was not disposed to show any documents to Ayuso Valdivieso or to any other person who was not directly interested in them, unless he was so ordered by a court. The petitioners then petitioned this Court for a peremptory writ of mandamus.

In view of the fact that the respondent is a high officer of the Government of Puerto Rico and that if this Court did not assume original jurisdiction, the remedy available to petitioners might become academic because of delay, we issued the alternative writ. *Municipality of Quebradillas* v. *Executive Secretary*, 27 P.R.R. 138. Subsequently, but before the respondent appeared, petitioners filed a supplementary complaint in which they substantially alleged that

after having filed the original complaint, several criminal libel informations were filed against Ayuso Valdivieso; that one of the complainants is the Auditor of Puerto Rico; and that petitioner Ayuso Valdivieso needs to inspect the documents described in the original complaint, not only in order to continue his editorial campaign, but also in order to prepare his defense in the said libel cases.

Respondent appeared and admitted having received the letter of February 2 and having been required by Notary J. Pedro Miranda and alleged certain defenses which we shall discuss in the course of this opinion.

I

The first contention of the respondent is that this Court lacks jurisdiction of the subject-matter. This defense of lack of jurisdiction is based on § 20 of the Organic Act, which, insofar as pertinent, provides:

"The auditor shall keep the general accounts of the government, be the custodian of and preserve the vouchers pertaining thereto. The jurisdiction of the auditor over accounts, whether of funds or property, and all vouchers and records pertaining thereto, shall be exclusive . . . .

"The decisions of the auditor shall be final, except that appeal therefrom may be taken by the party aggrieved or the head of the department concerned within one year, in the manner hereinafter prescribed. *The auditor shall,* except as hereinafter provided, *have like authority as that conferred by law upon the Comptroller General of the United States, . . ."* (Italics ours.)

Respondent argues that § 161 of the United States Revised Statutes authorized the head of each department of the Federal Government to promulgate rules not inconsistent with law for the operation of his department, the conduct of its officers and clerks and the custody, use, and preservation of papers and properties belonging to it; that § 46 of Title 31 of the United States Code declares that all laws relating to the administration of the departments, shall so far as applicable, apply to the office of the Comptroller General; that

exercising the authority conferred on them by law, the heads of departments as well as the Comptroller General of the United States have approved regulations relating to the inspection and issuance of certified copies whereby the examination of said documents and the issuance of certified copies are so restricted as practically to make them inaccessible to the public. He relies on several involving officers of inferior rank in various departments who, having been summoned as witnesses to produce in court official documents of their departments, refused, in compliance with said regulations, to produce them without the consent of the head of the department or to testify as to information acquired by them by reason of their office; and after having been punished for contempt, they were discharged in habeas corpus proceedings on the ground that, since the said regulations have the force of law, the courts had no jurisdiction to punish them for having obeyed those regulations. Respondent then concludes that, since he has such broad powers of regulation, his authority to permit the inspection of documents and the issuance of copies thereof is so discretionary that the courts can not intervene.

The fallacy of this argument is evident when it is noted that the power to regulate conferred upon the heads of departments under § 161 of the United States Revised Statutes is subject to the condition that such regulations shall not be inconsistent with law. We entertain no doubt that the Auditor has authority to regulate the issuance of copies of documents and inspection thereof in a reasonable manner in order that these activities shall not prejudice the daily operations and well-being of his office. But his authority to regulate is limited by § 409 of the Code of Civil Procedure of Puerto Rico which grants every citizen the right ''to inspect and take a copy *of any public document of* Puerto Rico, except as otherwise expressly provided by law'', and also by § 410 which provides that ''*Every public officer* having the custody of a public document is bound to give him, on demand, a certi-

fied copy of it on payment of the legal fees therefor . . .".
(Italics ours.)

With respect to the jurisdictional question, respondent
also relies on *Abueva v. Wood,* 45 Philippine Reports 612
(1924). This case dealt with a petition for mandamus filed
by several members of the Independence Commission of the
Philippines against the Governor of the Philippines, the Au-
ditor, and other persons, who were both members of that
Commission and members of the Legislature of the Philip-
pine Islands. The petitioners prayed that respondents be
compelled to exhibit to them and permit them to examine
all the vouchers and other documentary evidence in their pos-
session showing the disbursements and expenditures made by
the Independence Commission. They alleged that the original
vouchers were in the possession of Paciano Dizon, as acting
Insular Auditor, and that the duplicates of those vouchers
were in the possession of the respondent officers of the Com-
mission, and that the latter, as well as the Governor and the
Auditor, refused to permit the petitioners to examine these
vouchers. Other allegations were made which are not mate-
rial to the question we shall discuss. The respondents chal-
lenged the authority of the court to issue the writ of man-
damus and as to jurisdiction over the Auditor, the court said:

"With reference to the jurisdiction of the court to compel the
Acting Insular Auditor, Mr. Dizon, to comply with the prayer of
the petition, it may be said that the Auditor of the Philippine Islands,
under the law, has (*a*) exclusive jurisdiction over government ac-
counts and records pertaining thereto, and (*b*) power and authority
to audit, in accordance with law and administrative regulations, all
expenditures of funds or property pertaining to, or held in trust by
the Government or to provinces or municipalities, and to preserve
the vouchers pertaining thereto. The Jones Law further provides
that the decisions of the Auditor shall be final and conclusive upon
the executive branches of the government, except that appeal there-
from may be taken by the party aggrieved or the head of the depart-
ment concerned, within one year, to the Governor-General, which
appeal shall specifically set forth the particular action of the Auditor

from which the exception is taken, with the reasons and authorities relied upon for reversing such decision. The law further provides that, in case of a disagreement between the Governor-General and the Auditor, a further appeal is permitted to the Secretary of War, whose decision upon the question presented shall be final and conclusive. (Act of Congress, August 29, 1916, sections 24 and 25, vol. 12, Public Laws, pp. 247–249.)

"Under said provisions of the Jones Law, the decision of the Auditor is final unless an appeal is taken within the time prescribed. The decision of the Auditor is final unless it is reversed or modified in the manner provided by law, and the courts are therefore without jurisdiction to intervene or to modify his decision in the premises. The administrative jurisdiction of the Auditor over accounts, whether of funds or property, and all vouchers and records pertaining thereto, shall be exclusive. The jurisdiction of the Auditor in auditing and settling accounts is exclusive, whether of funds or property, and all vouchers and records pertaining thereto, and his decision or his accounting of such revenues and receipts and expenditures is final and conclusive, unless an appeal is taken therefrom within the period of one year. The Auditor being possessed with exclusive and final jurisdiction, except on an appeal, to audit all accounts of expenditures of public funds of the Philippine Government, it would seem to be a reasonable conclusion to hold that he has, at least, certain discretionary powers in arriving at an uncontrolled and independent conclusion. The legislative department of the government of the United States in the Philippine Islands would not have made the decisions of the Auditor final, unless an appeal is taken therefrom, without intending to give him an uncontrollable discretion with reference thereto. (*Lamb* vs. *Phipps,* 22 Phil., 456; *State* vs. *Babcock,* 22 Neb., 38.)

"Without a further discussion of the questions presented, we are of the opinion, and so decide, that we are without authority or jurisdiction to grant the remedy prayed for; . . . "(pages 638–39).

The respondent places great emphasis on the *Abueva* case because it deals with the construction of sections of the Organic Act of the Philippine Islands which are similar, with respect to the Auditor, to the corresponding sections of our Organic Act. The fact that the jurisdiction of the Auditor over the accounts and all the vouchers and records corresponding thereto is exclusive does not mean that the Auditor

is an officer beyond the reach of the law. Cf. *Municipality of Rio Piedras* v. *Serra, Garabis & Co.*, 65 F. (2d) 691, 693 (1933). The exclusiveness of his jurisdiction in connection with the custody of accounts and vouchers is with respect to other government departments, so that all the accounts of the government with their corresponding vouchers are held under the custody and responsibility of the Auditor alone, thus keeping said accounts and vouchers from being dispersed throughout the other departments.

It is true that § 20 of the Organic Act provides that the decisions of the Auditor shall be final unless an appeal is taken by the aggrieved party or head of the department concerned within one year, as prescribed in § 21.[1] But the decisions which are final are, according to § 21, those which may be rendered in the settlement of an account or claim. Even the decision of the Governor, affirming or reversing the decision of the Auditor in such cases, is subject *"to such right of action as may be otherwise provided by law."* (Italics ours.) But in the case at bar, in which the inspection of documents is involved and not a settlement of accounts, the provisions of §§ 20 and 21 of the Organic Act do not apply. Consequently, petitioners are not obliged to follow the administrative procedure referred to by the Philippine Court. The reasoning on which the decision of the *Abueva* case rests does not convince us and, with deference to that court, we are not disposed to follow it. We find no basis for a holding that this Court lacks jurisdiction to compel by mandamus the Auditor of Puerto Rico, as well as any other public officer, to comply with a duty imposed on him by law.

---

[1] Section 21 of the Organic Act provides:

*"That any person aggrieved by the action or decision of the Auditor in the settlement of his account or claim* may, within one year, take an appeal in writing to the Governor, which appeal shall specifically set forth the particular action of the Auditor to which exception is taken, with the reason and authorities relied on for reversing such decision. The decision of the Governor in such case shall be final, *subject to such right of action as may be otherwise provided by law."* (Italics ours.)

## II

 Respondent contends that the right granted to every citizen by § 409 of the Code of Civil Procedure to inspect and take copies of any public document is an abstract right; that in Puerto Rico there is no statute imposing on the respondent the duty to permit such inspection; and that for mandamus to lie it is not only required that a duty should exist, but also that the said duty must be especially imposed on the respondent by reason of his office. To say that a right exists without a correlative duty is specious. If a duty does not exist, there can be no right, because every right necessarily involves the existence of a duty. As has been said by an eminent jurist:

"Rights and duties are necessarily correlative. There can be no right without a corresponding duty, or duty without a corresponding right, any more than there can be a husband without a wife, or a father without a child. For every duty must be a duty towards some person or persons, in whom, therefore, a correlative right is vested. And conversely every right must be a right against some person or persons, upon whom, therefore, a correlative duty is imposed. Every right or duty involves a *vinculum juris* or bond of legal obligation, by which two or more persons are bound together. There can be no duty unless there is some one to whom it is due; there can be no right unless there is some one from whom it is claimed; and there can be no wrong unless there is some one who is wronged, that is to say, whose rights has been violated." Salmond on Jurisprudence (9th ed. 1937), § 72, p. 291.

But the duty to permit inspection not only exists as a duty correlative to the right to inspect granted by § 409, but that duty also impliedly arises out of the duty to issue certified copies imposed on respondent by § 410 [2] upon payment of the legal fees. The existence of that duty, clearly established by law, carries with it implicitly the equally clear right

---

[2] Section 410 of the Code of Civil Procedure provides:

"Every public officer having the custody of a public document is bound to give him, on demand, a certified copy of it on payment of the legal fees therefor, and such copy is admissible as evidence in like cases and with like effect as the original writing."

on the part of the plaintiffs to request such copies. But in order to exercise this right the plaintiffs must first examine the documents, for how else can they ascertain of what document they desire copies? To this effect in granting a peremptory writ of mandamus against the Auditor of State Accounts, directing him to permit the plaintiff to inspect certain vouchers in the possession of the respondent by reason of his office, the Supreme Court of Vermont stated:

". . . Furthermore, we think the existence of this right [of inspection] in respect to vouchers, files, papers, and records in the office of the Auditor of Accounts is impliedly recognized by the Act of 1904, to which reference has been made, since the full and intelligent exercise of the right to certified copies is dependent upon the right of inspection to ascertain of what particular records and documents copies are desired: In Alabama, it has been held that a similar statute requiring the Auditor of the State, on application and payment of legal fees therefor, to furnish a certified copy of any paper required to be kept in his office, implies that there is a right first to see the paper, for how, asks the court, could it otherwise be known whether or not it could be of any use. *Brewer* v. *Watson*, 61 Ala. 310." *Clement* v. *Graham*, 63 A. 146, 153 (1906).

In order that the right of inspection may be sought by mandamus it is not necessary that the duty to permit the inspection be expressly imposed on respondent by law as an obligation appertaining to his office.[3] The mere existence of the right on the part of the petitioners *ipso facto* gives rise to the duty on the part of the respondent, impliedly imposed on him by § 409 of the Code of Civil Procedure, which created the right claimed by petitioners.

In the famous case of *Marbury* v. *Madison*, 1 Cranch 137

---

[3] Section 649 of the Code of Civil Procedure provides:

"Mandamus is a high prerogative writ issuing out of the Supreme Court or district courts of Porto Rico, in the name of the People of Porto Rico, directed to any natural person, persons, company or corporation or inferior court of judicature within its jurisdiction requiring them to do some particular act therein specified *and which appertains to their office or duty*. It confers no new authority and the party to be coerced must have the power to perform the act." (Italics ours.)

(U. S. 1803), in referring to the nature of the writ of mandamus, the great Chief Justice stated:

"Blackstone, in the 3d volume of his commentaries page 110, defines a mandamus to be 'a command issued in the king's name from the court of king's bench, and directed to any person, corporation, or inferior court of judicature within the king's dominions, requiring them to do some particular thing therein specified, which appertains to their office and duty, and which the court of king's bench has previously determined, or at least, supposes, to be consonant to right and justice.' "

Interpreting this definition of Blackstone which, in so far as pertinent, is similar to the provisions of § 649 of the Code of Civil Procedure, the Court said:

"These circumstances certainly concur in this case . . .

"It is true that the mandamus, now moved for, is not for the performance of an act expressly enjoined by statute.

"It is to deliver a commission, on which subject the acts of congress are silent. This difference is not considered as affecting the case. It has already been stated that the applicant has, to that commission, a vested legal right, of which the executive cannot deprive him. He has been appointed to an office, from which he is not removable at the will of the executive; and being so appointed, he has a right to the commission which the secretary has received from the president for his use. The act of congress does not indeed order the secretary of state to send it to him, but it is placed in his hands for the person entitled to it; and cannot be more lawfully withheld by him than by any other person . . .

"*This, then, is a plain case for a mandamus, either to deliver the commission, or a copy of it from the record . . .*" (Italics ours.)

This has been our consistent interpretation of § 649 of the Code of Civil Procedure. Since 1917, when *Cintrón* v. *Berríos,* 24 P.R.R. 673, was decided, mandamus has been utilized in a long line of cases to reinstate public officers who had been illegally removed from their offices and who would have been deprived of justice if we had followed the narrow construction which respondent now proposes we adopt.

94

## III

■ Contrary to the maxim *ubi jus ibi remedium*, the right to inspect may exist without the existence of a remedy to enforce that right. This is because § 651 of the Code of Civil Procedure requires, as a condition for the issuance of a writ of mandamus, that a petitioner shall have a special interest different from the general interest possessed by any citizen in the right claimed. It necessarily follows that a person who because of mere curiosity desires to inspect a public document can not resort to mandamus. *Bend Pub. Co.* v. *Haner*, 244 Pac. 868 (Ore. 1926); *Pressman* v. *Elgin*, 50 A. (2d) 560 (Md. 1947).

Respondent cites *Lutz* v. *Post*, 14 P.R.R. 830, in arguing that in this jurisdiction it has been held that editors of newspapers, as a class, do not have the special interest in obtaining copies of public documents out of which arises the right to petition for mandamus in order to obtain them. It was said in that case:

"Then do editors, as a class, have any more rights in regard to the archives of the public offices than do other citizens? We opine not. If not then the applicant in this case has no more interest in the subject matter of this suit than any other citizen of Ponce or Porto Rico.

" * * * * * * *

"Surely such a general interest as any citizen of the Island might have in the matter is not sufficient to qualify a person to become the plaintiff in a suit for mandamus in a case like the one before us, and if editors as a class have any special rights or interests in such cases. no text or decision sustaining such a claim has been pointed out to us; nor have we been able to find any authority for such a claim in any law book to which we have been able to refer, in a somewhat diligent search instituted and prosecuted since the submission of this matter to our consideration . . . " (Pages 841-2).

That was said by this Court in 1908; but twenty years later, the Supreme Court of Michigan in *Nowack* v. *Fuller*, 219 N. W. 749 (1928), 60 A.L.R. 1351, which involved a man-

damus proceeding brought by the editor of a newspaper against the General Auditor of the State to compel the latter to permit him to inspect certain public records, in referring to the special interest of the petitioner entitling him to seek the writ of mandamus, said the following:

"Apart from his public interest, his petition shows that he has been hampered and injured in his business by the refusal of the defendant to allow him to inspect the records in his office. This is a special interest. Is it a sufficient interest to entitle him to the aid of this court by writ of mandamus? We think so. He is the manager and editor of a newspaper. It is published and circulated in Michigan. He sells news to the people through the medium of his paper. In a proper and lawful manner, he has a right to publish matters of public interest. The citizens and taxpayers of this state are interested in knowing whether the public business is being properly managed. By denying him access to the public records for the purpose of securing such information, he is deprived of legal rights for which he is entitled to redress by the writ of mandamus. It is the plain duty of the auditor general to exhibit his official records to any citizen of Michigan who desires to inspect them for any proper and lawful purpose, in circumstances not detrimental to the public business."

To the same effect, see *Holcombe* v. *State,* 200 So. 739. (Ala. 1941); *Bend Pub. Co.* v. *Haner, supra;* Seaton, The Rights and Privileges of the Press, § 10, p. 16; Thayer, Legal Control of the Press (1944) p. 134.

The right of the press to inspect public documents has progressed considerably since 1908, when the *Lutz* case was decided. Probably the Justices who took part in its decision would not decide it now, insofar as this point is concerned, in the manner they did more than thirty-eight years ago.

In view of the conclusion we have reached with respect to the special interest petitioners have in the present case as owners and Editors of "El Imparcial", we need not decide if the mere condition of taxpayers entitles them to mandamus. Cf. *Buscaglia, Treas.* v. *District Court,* 64 P.R.R. 11.

## IV

■ Respondent also urges that the writ of mandamus should not be issued in this case because petitioners should have sought it as relators through the Attorney General.

Never, so far as we know, has a writ of mandamus been issued in this jurisdiction at the request of a relator through the Attorney General. And this is so because § 651 of the Code of Civil Procedure expressly provides that the writ of mandamus may be issued on the information of the party beneficially interested. *Union Pacific R. R. Co.* v. *Hall et al,* 91 U. S. 343 (1875); *Pressman* v. *Elgin, supra.*

## V

■ Finally, respondent maintains that the writ of mandamus does not lie because he has sent the accounts and vouchers related to Concrete Industries, Inc., to the Attorney General by whose order the District Attorney of San Juan is conducting an investigation. We believe this is not a sufficient reason to excuse respondent from complying with his duty to permit petitioners to examine the records in question. These accounts and vouchers, by operation of law, are at all times under the control and custody of the respondent, as Auditor of Puerto Rico, and it will be a simple matter for him to make the appropriate arrangements with the District Attorney, if the investigation has not yet been completed, in order to permit the petitioners to inspect the documents, and to take the notes desired. *Collins* v. *State,* 143 S. W. (2) 1.

■ We are of the opinion that petitioners are entitled to the peremptory writ of mandamus they seek to permit them to inspect and take notes of the vouchers and other documents mentioned in the Notarial Certificate issued by Notary J. Pedro Miranda on February 6th; but the petitioners must submit to reasonable supervision by the respondent, his agents or employees, in order to guarantee the safety of these documents, and to any other reasonable measure fixed by him to avoid prejudice to the work of his office.

*Direct Mail Service* v. *Registrar of Motor Vehicles,* 5 N.E. (2d) 545, 547 (Mass. 1937).

Petitioners are not entitled, however, to compel the Auditor of Puerto Rico to furnish the information requested in their letter of February 2nd. The respondent does not have the duty to make such a search and furnish that information at the request of private citizens, unless certified copies of specific records are sought, on payment of the legal fees. Section 410 of the Code of Civil Procedure.

For the foregoing reasons, the petition is granted and the peremptory writ of mandamus is issued.