## THEISEN *v.* CITY OF DEARBORN.

### OPINION OF THE COURT.

1. JUDGMENT—RES JUDICATA.

   An existing final judgment rendered upon the merits without fraud or collusion by a tribunal of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties, or their privies, in all other actions or suits in the same or any other tribunal of concurrent jurisdiction on the points and matters in issue in the first proceeding.

2. SAME—COURT OF CONCURRENT JURISDICTION.

   The judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar, or as evidence, conclusive between the same parties or privies upon the same matters when directly in question in another court.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 9, 11] 30A Am Jur, Judgments § 324 *et seq.*
[2] 30A Am Jur, Judgments §§ 312, 337.
[3] 39 Am Jur, Parties § 44; 30A Am Jur, Judgments § 405.
[4, 5, 13] 30A Am Jur, Judgments § 405.
[6] 30A Am Jur, Judgments §§ 455, 463.
[7] 30A Am Jur, Judgments § 851 *et seq.*
[8] 30A Am Jur, Judgments § 342.
[10, 12] 30A Am Jur, Judgments §§ 150–155.
[14] 4 Am Jur 2d, Appeal and Error § 491.
[15, 16] 30A Am Jur, Judgments § 325.
[17, 18] 30A Am Jur, Judgments § 328.
[19] 30A Am Jur, Judgments § 368.
[20, 31] 30A Am Jur, Judgments § 373 *et seq.*
[21–23] 30A Am Jur, Judgments § 364.
[24, 25] 40 Am Jur, Pensions § 4.
[26] 1 Am Jur 2d, Actions §§ 112, 135.
[27] 40 Am Jur, Pensions §§ 16, 18, 19.
[28] 30A Am Jur, Judgments § 363 *et seq.*
[29, 32] 40 Am Jur, Pensions § 32.
[30–35] 40 Am Jur, Pensions § 33.
[36, 37, 46, 47] 45 Am Jur, Records § 14 *et seq.*
[38–40] 42 Am Jur, Public Funds § 2.
[41, 42] 40 Am Jur, Pensions § 34.
[43] 40 Am Jur, Pensions § 1.
[44, 45] 40 Am Jur, Pensions §§ 18, 19.

3. ACTION—CLASS ACTION.

> One or more persons may, in a class action, maintain or defend an action for themselves and various other persons similarly situated and interested (GCR 1963, 208).

4. JUDGMENT—PARTIES—CLASS ACTIONS.

> The general rule is that no person is bound by a judgment except those who are parties or who stand in privity with others who are parties, but an exception exists as to persons represented by parties in a class action.

5. SAME—CLASS ACTIONS—CONVENIENCE AND NECESSITY—COMMON INTEREST.

> The rule of law that a judgment against parties representing other persons in a class action is operative against those so represented is founded on convenience and necessity, and is based upon the theory that the persons joined and not joined have a common interest, that the parties joined may be depended upon to bring forward the entire merits of the controversy as a protection to their own interests, and that the persons not joined as parties are sufficiently represented by those who are joined.

6. SAME—RES JUDICATA—IDENTITY OF CAUSE OF ACTION—SUBJECT MATTER AND ISSUES.

> A person relying upon a former adjudication must generally show the identity of the cause of action, the subject matter, and the issues.

7. SAME—APPEAL—COLLATERAL ATTACK—RETIREMENT BENEFITS.

> The decision of trial court, in finally determining the amounts of benefits to which retired policemen and firemen are entitled under the retirement provisions of the charter and ordinances of defendant city, could have been appealed if plaintiffs had believed the determination to be based on an incorrect formula, but the judgment cannot be attacked collaterally.

8. SAME—APPEAL—PROPER REMEDY TO TEST FORMULA.

> The proper procedure to contest the validity of the formula used in arriving at annuity retirement benefits for retired policemen and firemen in a previous suit between the same parties in the same court would have been to appeal the judgment of the previous suit.

9. SAME—RES JUDICATA—APPEAL AND ERROR—PENSION RIGHTS.

> Decision of trial court in prior action which established the formula to be used in arriving at annuity retirement benefits

for retired policemen and firemen *held,* conclusive and a bar to instant action, where the subject matter and the issues are identical, the parties and the forum are the same, and under the facts found in the record the use of the formula does not appear to impair or diminish the rights of plaintiff retirees (Const 1963, art 9, § 24; Dearborn City Charter, ch 21, § 21.8).

10. SAME—FORMULA FOR RETIREMENT BENEFITS—FIREMEN—POLICE-
MEN—AGREEMENT OF PARTIES.

Judgment based on formula to be used in arriving at amount of retirement benefits due to plaintiff retired firemen and policemen based on agreement of the parties, *held,* a judgment of the court, where the trial judge in his opinion applied the formula provided to the provisions of the city charter and ordinances, and it entered into the record as an administrative act of the court.

11. SAME—CONCLUSIVENESS.

A right or fact which has been judicially tried and determined by a court of competent jurisdiction, or an opportunity for such trial having been given, is conclusive on the parties and those in privity with them, where involved in a subsequent action.

12. SAME—CONSENT JUDGMENT.

A judgment entered by the court upon a hearing or upon consideration of the case is a judgment of the court and the fact that the parties might have added their consent does not convert it into a judgment by consent.

13. SAME—RES JUDICATA—CLASS ACTION.

Claims presented by appellants, individually and as class representatives of retired policemen and firemen *held,* barred under doctrine of res judicata, where they had been previously decided upon the merits without fraud or collusion.

14. APPEAL AND ERROR—QUESTIONS REVIEWABLE—INSPECTION OF REC-
ORDS—MUNICIPAL CORPORATION.

Plaintiffs' contention that they should have a right to inspect the financial records of defendant city in order to "measure their claims according to the language set forth in the charter," will not be heard on appeal, where the issue was not raised in the trial court.

Dissenting Opinion.

Holbrook, J.

15. Judgment—Res Judicata—Policy.

*The well established doctrine of* res judicata *on the one hand effectuates the policy of putting an end to litigation and on the other it prevents individuals from being harassed by successive suits.*

16. Same—Res Judicata—Bar to Another Action.

*A judgment that is asserted as an absolute bar to another action on the same demand or cause of action, is conclusive not only as to every matter that was offered in the former action to sustain or defeat the demand, but as to every other matter that might have been offered for that purpose.*

17. Same—Estoppel—Different Cause of Action.

*A judgment that is asserted as a bar to another action on a different demand or cause of action, operates as an estoppel only as to those matters in issue, or points controverted, upon the determination of which the finding or verdict was rendered.*

18. Same—Res Judicata—Effect—Same Cause of Action—Different Cause of Action.

*A second action upon the same cause of action is barred by the judgment of a prior action, since it is conclusive upon every matter that might have been litigated in the former action, whether it was in fact litigated or not; but if the second action is upon a different cause of action, the judgment operates as an estoppel only as to the facts or questions actually litigated and determined.*

19. Same—Successive Causes of Action From Same Transaction.

*The same transaction or state of facts may give rise to distinct or successive causes of action, and a judgment upon one will not bar a suit upon another.*

20. Same—Second Suit on Different Cause of Action.

*A judgment in a former suit, although between the same parties and relating to the same subject matter, is not a bar to a subsequent action where the cause of action is not the same.*

21. Actions—Contracts—Division of Claims.

*Although one who has a claim against another cannot, in the absence of an agreement to the contrary, divide his claim and make it the subject of separate actions, a contract may be divisible by its terms so as to give rise to more than one cause of action.*

22. CONTRACTS—CAUSE OF ACTION—DEFAULT—ENTIRE AGREEMENT—SEVERAL PERFORMANCE.

> *An action lies upon every default of one who contracts to do several things at several times, for although the agreement is entire, the performance is several, and a contract is divisible in its nature.*

23. JUDGMENT—ACTIONS—MUNICIPAL CORPORATIONS—PENSIONS—RES JUDICATA.

> *Action by plaintiff retired policemen and firemen to recover and determine increased pension benefits under the charter provisions of the defendant city for the period subsequent to January 31, 1961, held, to be a separate cause of action from an earlier action by the same plaintiff for the same recovery and determination for the period from October 1, 1952, to January 31, 1961, since the annuity payable to retirees is payable in installments, and failure to pay each installment gives rise to a separate cause of action, only the issues common to both cases being* res judicata *(Dearborn City Charter, ch 21).*

24. CONSTITUTIONAL LAW—RETIREMENT—MUNICIPAL CORPORATIONS—CONTRACTS.

> *The obligation of a city with respect to retirement benefits of its policemen and firemen was made contractual by Constitution and each annuity payment creates a cause of action the moment it becomes payable, distinct from earlier causes prior to the effective date of the Constitution (Const 1963, art 9, § 24; Dearborn City Charter, ch 21).*

25. MUNICIPAL CORPORATIONS—RETIREMENT SYSTEMS—CONTRACTS.

> *Municipal retirement systems did not have a contractual status prior to January 1, 1964, the effective date of the 1963 Constitution.*

26. ACTION—DISTINCT CAUSES OF ACTION—SEVERABILITY OF OBLIGATION.

> *The feature which gives rise to several distinct causes of action arising out of transaction is the severability of the obligation, regardless of whether that obligation is contractual or otherwise.*

27. MUNICIPAL CORPORATIONS—RETIREMENT SYSTEMS—OBLIGATION.

> *Defendant city, by enacting a retirement system, obligated itself to pay according to the provisions of that system until it was either altered or deleted, even though the obligation was not contractual.*

28. APPEAL AND ERROR—PENSION PLAN—LONGEVITY—FORMULA FOR
PAYMENT—JUDGMENT—RES JUDICATA.

Statement of trial judge that longevity pay was considered
in determination of the formula to be used in previous action
to determine amount of retirement benefits due to plaintiff
retired firemen and policemen from retirement system of de-
fendant city held, to have no legal effect, as the former judg-
ment speaks for itself, and an examination of the case reveals
that longevity pay was not an issue, and hence, the former case
is not res judicata of this issue and plaintiffs have a right
fully to litigate their claims in this regard.

29. PENSIONS—LONGEVITY—MUNICIPAL RETIREMENT SYSTEMS.

Longevity pay is a significant factor in determining the pension
rights of retired policemen and firemen under municipal retire-
ment systems.

30. SAME—FLUCTUATING PENSIONS—RETIRED POLICEMEN AND FIRE-
MEN.

The primary purpose of the fluctuating pension plan for retired
municipal policemen and firemen is to guarantee the pensioner
or his widow, a fairly constant standard of living despite the
inflationary tendencies of the economy and to maintain equality
of position between the retired member and the person currently
holding the rank attained by the pensioner before his retire-
ment.

31. JUDGMENT—RES JUDICATA—PENSIONS—APPLICATION OF FORMULA.

Plaintiff retiree's claim, that defendant is using the wrong for-
mula to determine the amount that each retiree should receive
as his retirement annuity, must fail since the formula was
decided in a former case and cannot be relitigated, but plain-
tiffs herein are not thereby foreclosed from adjudicating the
issue of whether the formula, as determined by the prior de-
cision, has been correctly applied to payments due since the
former decision, and whether the payments due since the
effective date of the present Constitution making pensions
contractual in nature have been consistent with charter pro-
visions of the defendant city (Const 1963, art 9, § 24; Dear-
born City Charter, ch 21).

32. PENSIONS—MUNICIPAL CORPORATIONS—MAXIMUM CLASS RATE—
AVERAGE FINAL COMPENSATION.

Defendant city's use of the maximum class rate plus longevity
in their computation of plaintiffs' retirement rights under
the formula arrived at by the court in a prior litigation,

*rather than their use of* average final compensation *as contended
for by plaintiff retirees* held, *incorrect, since the* maximum
class rate *does not have any relation to what the retiree
actually earned during his years of service, and the formula
depends on figures based on the employee's past earning record,
and, also, the term is not mentioned in either the opinion or
judgment of the case in which the formula was determined.*

33. CONSTITUTIONAL LAW—RETIREMENT RIGHTS—CONTRACTUAL STA-
TUS—IMPAIRMENT.

*The rights of employees under municipal pension systems may
not be impaired, since such systems were given a contractual
status by a provision of the new Constitution (Const 1963,
art 9, § 24).*

34. SAME—CONTRACT RIGHTS—PENSIONS.

*The rights of the retired employees of defendant city, set forth
in the city charter, are contractual and may not be impaired
(Const 1963, art 9, § 24; Dearborn City Charter, ch 21).*

35. SAME—PRIOR JUDGMENT—IMPAIRMENT OF CONTRACT RIGHTS.

*To the extent that judgment in a prior action between same
parties which adopted and used a formula for determining
amount of retirement benefits due to plaintiff retired policemen
and firemen under the municipal pension plan of defendant city,
varies the rights of the retirees as set forth in the city charter,
the judgment is void after the effective date of the new
Constitution making municipal pension systems contractual
(Const 1963, art 9, § 24; Dearborn City Charter, ch 21).*

36. APPEAL AND ERROR—PENSION PLAN—RIGHT TO INSPECT RECORDS.

*Plaintiff retired policemen's and firemen's contention in action
for determination of pension rights under municipal pension
plan of defendant city that they have a right to see the
financial records of defendant city held, correct, since the
records pertaining to retirement annuities are reports of public
moneys, and as public records are open to inspection, plain-
tiffs have a special interest in the records, and the record
discloses plaintiffs requested the trial court to require defend-
ant to furnish the necessary records for inspection .(Const
1963, art 9, § 23).*

37. CONSTITUTIONAL LAW—FINANCIAL RECORDS—PUBLIC MONEYS—
INSPECTION.

*The Constitution requires that "all financial records, accountings,
audit reports, and other reports of public moneys shall be
public records and open to inspection" (Const 1963, art 9,
§ 23).*

38. Words and Phrases—Public Moneys.

Public moneys are defined as "all moneys which shall come into the hands of any officer of any county, or of any township, school district, city or village, or of any other municipal or public corporation within this State, pursuant to any provision of law authorizing such officer to collect or receive the same" (CL 1948, § 129.11).

39. Same—Public Moneys.

Not all funds held by governmental officers are public moneys.

40. Same—Public Funds.

Public funds are defined as funds belonging to the State or to any county or political subdivision of the State raised for governmental purposes.

41. Municipal Corporations — Public Funds — Appropriations — Pensions.

Funds appropriated by a city for payment of retirement benefits are public moneys, since part of the funds for a retirement system come from salary deductions, and part of the funds come from municipal appropriations (CLS 1961, § 38.559).

42. Same—Pensions—Appropriations—Governmental Purposes.

Appropriation of moneys by a municipal corporation for payment of municipal pensions held, to be for a governmental purpose.

43. Same—Pensions—Purpose.

A judiciously administered pension fund may be a potent agency in securing and retaining the services of the most faithful and efficient class of persons connected with municipal services in which property owners and residents of a municipality are most vitally interested.

44. Same—Public Safety and Well-Being—Policemen—Firemen.

The safety and well-being of the general public of a municipal corporation is the direct concern of its policemen and firemen.

45. Same—Firemen and Policemen—Pension.

Payment of retirement annuities by a municipal corporation to its retired policemen and firemen held, to be a governmental function, as the function of policemen and firemen is governmental, and the incentive of general pensions will enable municipalities to attract qualified personnel.

46. Records—Common Law—Inspection.

Every person has a common-law right to inspect, either personally or by his agent, public records, provided he has an interest

*therein which is such that would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information.*

47. MUNICIPAL CORPORATIONS—PENSION SYSTEM—INSPECTION OF REC-ORDS.

*Plaintiff retired policemen and firemen in suit for determination of amounts due under municipal pension system held, to have sufficient special interest in the records of the city pertaining to the funds available and paid for pensions to require defendant city to furnish such records.*

Appeal from Wayne; Bowles (George E.), J. Submitted Division 1 April 5, 1966, at Detroit. (Docket No. 1,270.)    Decided January 24, 1967. Leave to appeal granted by Supreme Court March 29, 1967.    See 379 Mich 757, 380 Mich 621.

Class action by Arthur N. Theisen, Retired and Pensioned Policemen and Firemen Association of Dearborn, an unincorporated association, George Morrison, as its president and individually, and others, against City of Dearborn, a Michigan municipal corporation, for an accounting and for a determination of moneys due under the provisions of the City of Dearborn's policemen's and firemen's retirement system.    Defendant's motion for an accelerated judgment granted.    Plaintiffs' motion to set aside the judgment denied.    Plaintiffs appeal.    Affirmed.

*James Thomson,* for plaintiffs.

*Ralph B. Guy, Jr.,* Corporation Counsel, for defendant.

J. H. GILLIS, P. J.    This is a class action brought July 15, 1964, by individuals and the Retired and Pensioned Policemen and Firemen Association of Dearborn, an unincorporated association, against the city of Dearborn.    Plaintiffs claimed they were entitled to additional moneys owing to them by

reason of certain provisions of the policemen's and firemen's retirement system. They sought an accounting and discovery to inspect the financial records of the city to ascertain the moneys owing to them under the pertinent provisions of the charter and ordinances of the defendant city.

Defendant filed a motion for accelerated judgment claiming that a prior case, Morrison v. City of Dearborn (Wayne County No. 299–972) was in *res judicata* as to the issues raised by the instant litigation. The circuit court for Wayne county granted the motion for accelerated judgment. Plaintiffs' motion to set aside the judgment was denied. Plaintiffs' appeal, raising two questions: (1) Is the matter involved *res judicata?* (2) Do appellants have the right to see the financial records of the defendant city?

The Morrison Case was an action brought by retired policemen and firemen of the city of Dearborn to compel defendant city to pay increased retirement annuities provided by chapter 21 of the Dearborn city charter. The circuit court in accord with an agreement between the parties made certain findings in the case including the formula to be used in ascertaining what the plaintiffs were entitled to receive in the form of increased retirement annuities.[1] Judgment was entered in the Morrison Case

---

[1] The following is an excerpt from the trial court's opinion:

"So far as computation, the first consideration is the ascertainment of a retiree's 'average final compensation.'

"Chapter 21, at section 21.8, gives the formula. It is there provided that 'average final compensation' means:

" 'The average annual salary or wages paid to a member by the city for service rendered as a policeman or fireman during his last five years of service preceding retirement; or if he has less than five years of service, then the average annual salary or wages paid to him by the city during his total years of service.'

"This necessarily is an individual computation for each of the plaintiffs here.

"The next computation is the ascertainment of what a retiree is entitled to immediately upon his retirement. Section 21.28 provides the formula, specifying that:

in favor of the plaintiffs in the amount of $195,936.19, which sum was arrived at by applying the formula set forth in footnote 1. The judgment covered the

---

" '* * * a member shall receive a service retirement annuity equal to one-fiftieth of his average final compensation multiplied by his total years of creditable service * * *'

"This language, however, is qualified by these words:

" '* * * The service retirement annuity of a member or beneficiary shall not exceed one-half his average final compensation, or seven-tenths of the annual rate of pay received by a patrolman first-class, or a fireman first-class, whichever amount is the lesser.'

"The second computation, too, is an individual one for each of the claimants, and it is qualified by the language setting an outer limit or ceiling upon the annuity.

"Finally, the third computation involves the disputed fluctuation of benefits. The formula is found at section 21.37. This language means that when a rate of compensation is changed for any rank, grade, or position, for those still in active service, the annuities received by retirees or beneficiaries are also changed. The formula is:

" '* * * the annuity, or other benefit, payable to a beneficiary, shall be adjusted to an amount based upon the changed rate of compensation for the corresponding rank, grade, or position.'

"This means that the annuity is changed in relation to the amount of change in the rate of compensation for the corresponding rank, grade, or position. The pivotal language, it is believed, is 'on which the annuity, or other benefit, payable to a beneficiary, is based.' This term is defined in section 21.28 heretofore noted. The annuity payable to a beneficiary under section 21.28 is based upon a certain rank, grade, or position. So far as the annuity is concerned, that is, that which is enjoyed first upon retirement, it is derived not from ascertaining the last rank, grade, or position of the retiree but rather by the use of the formula found at section 21.28. The average final compensation is a figure arrived at by ascertaining what the average salary or wages paid to the member during his last five years of service before retirement or if he has less than five years then the average annual salary or wages paid to him during his total years of service. The figure arrived at by this process, that is, the average final compensation will determine then the rank, grade, or position of the retiree when he first draws an annuity and that is the rank, grade, or position which is thereafter used in the computation of increases under section 21.37.

"This, too, must be an individual determination. Whenever the rank, grade, or position is changed under section 21.37, then the retiree or beneficiary is entitled to an adjustment of the annuity in an amount based upon the amount of change in the compensation for that rank, grade, or position in which the retiree was first found in the computation of his average final compensation. I find no authority for dividing this figure by five as urged upon the court by defendants. However, there is one important proviso; reading the pertinent provisions together in such a way as to harmonize all, specifically reading section 21.37 with section 21.28, it is held that the annuity, as increased or decreased under section 21.37, shall at no time exceed one-half the rate of compensation for the rank, grade,

amounts to be paid according to the adjusted annual annuities and accrued payments for the period October 1, 1952, through January 31, 1961.

Defendant asserts that the Morrison judgment is *res judicata* and controlling in this litigation.

The doctrine of *res judicata* as stated by our Supreme Court is that:

"An existing final judgment or decree rendered upon the merits without fraud or collusion by a tribunal of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties, or their privies, in all other actions or suits in the same or any other tribunal of concurrent jurisdiction on the points and matters in issue in the first proceeding." *Lilienthal* v. *City of Wyandotte* (1938), 286 Mich 604, 616.

The judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or as evidence, conclusive between the same parties, upon the same matter, when directly in question in another court. *Johnson Co.* v. *Wharton* (1894), 152 US 252 (14 S Ct 608, 38 L ed 429).

In a class action, one or more persons may be permitted to maintain or defend an action for themselves and various other persons similarly situated and interested. GCR 1963, 208. An exception to the general rule that no person is bound by a judgment except those who are parties or stand in privity with others who are parties exists in the

---

or position of one still in active service, or seven-tenths of the rate of compensation for the rank, grade, or position of one still in active service, whichever amount is the lesser [*sic?*]. Any other theory or any other interpretation would lead to an absurd result, for annuities to be enjoyed by retirees or beneficiaries would increase disproportionately to the compensation of those still in active service. In result then, the ceiling or proviso continues to operate as an outer limit upon annuities. It is noted that when the revised policemen's and firemen's retirement system found at chapter 23 was adopted at section 23.18 (a) thereof, an outer limit was also placed upon a service retirement annuity."

case of persons who are so represented by persons on the record as parties. *Hansberry* v. *Lee* (1940), 311 US 32 (61 S Ct 115, 85 L ed 22, 132 ALR 741).

A judgment against the parties representing the general class is operative against those represented. *Smith* v. *Swormstedt* (1853), 57 US 288 (14 L ed 942). This is a rule of law founded on convenience and necessity. *Masonic Widows' and Orphans' Home and Infirmary* v. *Hieatt Brothers* (1923), 197 Ky 301 (247 SW 34); *Mathews* v. *Lightner* (1902), 85 Minn 333 (88 NW 992). It is based upon the theory that the persons joined and not joined have a common interest (*Brenner* v. *Title Guarantee & Trust Company* [1937], 276 NY 230 [11 NE2d 890, 114 ALR 1010]), that the parties joined may be depended upon to bring forward the entire merits of the controversy as a protection to their own interests (*Hale* v. *Hale* [1893], 146 Ill 227 [33 NE 858, 20 LRA 247]) and that the persons not joined as parties are sufficiently represented by those who are joined (*Sam Fox Publishing Co., Inc.,* v. *United States* [1961], 366 US 683 [81 S Ct 1309, 6 L ed 2d 604]). A person relying upon a former adjudication must generally show the identity of the cause of action, the subject matter, and the issues. *United States* v. *Parker* (1887), 120 US 89 (7 S Ct 454, 30 L ed 601); *Murphy Chair Co.* v. *American Radiator Co.* (1912), 172 Mich 14.

Analyzing the facts of the case before this Court in light of the above, we find:

The cause of action in Morrison was to determine the amount of benefits to which retired policemen and firemen in the city of Dearborn are entitled.

The cause of action in the instant case is to determine the amount of benefits to which retired policemen in the city of Dearborn are entitled. The subject matter is identical. The issues have not

changed. The parties were and are before this Court attempting to ascertain the amount of moneys owing to them under the pertinent provisions of the charter and ordinances of defendant city.

It is now the plaintiffs' claim that they are entitled to have longevity pay included in the computation of the formula which is used in arriving at annuity retirement benefits.

The formula in question is found in chapter 21, § 21.8, of the Dearborn city charter. In this formula longevity is not mentioned as such, but, according to the affidavit presented by the city controller, longevity was utilized in computing the average annual wage. It is also important to note that the trial court's opinion stated that longevity pay was included in the computations and formula. The formula was arrived at by the parties and adopted by the court and *included* in the formal judgment.

While it is true that if an incorrect formula was used, the decision of the court could be appealed; it cannot now be collaterally attacked. *Corbitt* v. *Timmerman* (1893), 95 Mich 581 (35 Am St Rep 586); *Swartz* v. *Laurencelle* (1963), 371 Mich 153. An appeal from the Morrison decision would have been the proper procedure to contest the validity of the formula. *Forbes* v. *Ziegenhardt* (1950), 328 Mich 187.

A possible factor to be considered would be whether the formula used by the defendant impairs or diminishes the rights of retired policemen in light of Const 1963, art 9, § 24. Under the facts as presented and the formula used in the earlier decision, no rights appear to be impaired or diminished. For these reasons, the decision of Judge Bowles is conclusive and a bar to later suits. *Drouillard* v. *Labadie* (1929), 248 Mich 503.

It appears then that while the formula to be used was arrived at by agreement of the parties involved, the trial judge in his opinion applied the formula to be used to the provisions of the city charter. Thus, the formula to be used was not derived from the agreement of the parties alone and entered into the record as an administrative act by the court. In the latter case, we would have the classic illustration of a consent judgment which is primarily the act of the parties to the litigation. *Union* v. *Ewing* (1963), 372 Mich 181; *Ortiz* v. *Travelers Insurance Company* (1966), 2 Mich App 548.

In the Morrison Case, the interpretation of this section as advocated by the parties was considered. (See trial court's opinion in the Morrison decision.) A suggestion that the changed compensation rate be divided by 5 was rejected by the trial court. This further indicates that the formula was not a mere stipulation by the parties but rights or facts judicially tried and determined by a court of competent jurisdiction. *Skinner* v. *Argentine Township Board* (1927), 238 Mich 533. In the last cited case, the doctrine of *res judicata* has been held applicable when an opportunity for such trial has been given.

A judgment entered by the court upon a hearing or upon consideration of the case is a judgment of the court. The fact that the parties might have added their consent does not convert it into a judgment by consent.

The formula ultimately used to determine individual annuity benefits was arrived at after lengthy consideration and deliberation by the trial court with the consent of the parties. The claims presented to this Court by the appellants, individually and as class representatives, having been previously decided upon the merits without fraud or collusion, are barred under the doctrine of *res judicata*.

Plaintiffs also contend they have the right to inspect the financial records of the defendant in order to "measure their claim according to the language set forth in the charter." Defendant contends that plaintiffs were afforded the opportunity to inspect the records and in fact did inspect the financial records. This issue was not raised in the trial court and will not be heard here for the first time. *Gorby* v. *Yeomans* (1966), 4 Mich App 339. Further, there is no showing that plaintiffs were denied access to the city's financial records. On the contrary, defendant makes the point that the figures used by the plaintiffs could only have been obtained from the city records.

Judgment affirmed. Costs to appellee.

McGregor, J., concurred with J. H. Gillis, P. J.

Holbrook, J. (*dissenting*). The doctrine of *res judicata* is too well established to be questioned at this point. On one hand it effectuates the policy of putting an end to litigation—*interest republicae ut sit finis litium;* and on the other it prevents individuals from being harassed by successive suits —*nemo debet bis vexari pro eadem causa.* 50 CJS, Judgments § 592. In furtherance of the purposes of the doctrine, two rules have been developed.

"It is a well-settled general rule that where a judgment is asserted as an absolute bar to another action on the same demand or cause of action, it is conclusive not only as to every matter that was offered in the former action to sustain or defeat the demand, but as to every other matter that might have been offered for that purpose. On the other hand, where the subsequent action is on a different demand or cause of action, the judgment operates as an estoppel only as to those matters in issue, or points

controverted, upon the determination of which the finding or verdict was rendered. In other words, where the second action is upon the same cause of action, the judgment is conclusive upon every matter that might have been litigated in the former action, whether it was in fact litigated or not, while if the second action is upon a different cause of action, the judgment operates as an estoppel only as to the facts or questions actually litigated and determined." 128 ALR 483.

See, also, *United States Fidelity & Guaranty Co. v. McCarthy* (CA 8, 1929), 33 F2d 7 (70 ALR 1447), and *Creek v. Laski* (1929), 248 Mich 425, 431 (65 ALR 1113), where the Michigan Supreme Court said:

" 'the same transaction or state of facts may give rise to distinct or successive causes of action, and a judgment upon one will not bar a suit upon another. Therefore a judgment in a former suit, although between the same parties and relating to the same subject matter, is not a bar to a subsequent action, when the cause of action is not the same.' "

Accordingly, the first inquiry must be directed toward the question of whether the Morrison decision adjudicated the same cause of action upon which the present plaintiffs have based their suit. If the cause of action is not the same, then the issues still open for adjudication must be determined.

"While it is fully established that one who has a claim against another cannot, in the absence of an agreement to the contrary, divide his claim and make it the subject of separate actions * * * 'a contract may be divisible by its terms so as to give rise to more than one cause of action. Thus, if one contracts to do several things at several times, an action lies upon every default; for, although the agreement is

entire, the performance is several, and a contract is divisible in its nature.' * * *

" 'The bringing of the suit * * * on the ten installments, then past due, did not estop appellant from instituting suits on the other installments when due, if not paid, and if appellee was vexed or harassed thereby, it must submit or pay the installments. * * * Appellant had a right of action for each monthly installment, each being distinct and separate from the other, and therefore he was entitled to bring suit on each installment as it became due, if not paid.' " 69 ALR 889.

In Morrison, the plaintiffs sought and recovered increased pension benefits under the charter provisions of the defendant city of Dearborn, and the judgment specifically covered the period from October 1, 1952, through January 31, 1961. The plaintiffs in the instant case seek to recover increases *since* the latter date. The annuity payable to retirees is payable in separate installments, and each gives rise to a separate cause of action. The strength of this conclusion is not diluted merely because the quotation above speaks in terms of a contract.

The 1963 Constitution, art 9, § 24, provides that "the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." After the effective date of the 1963 Constitution,[1] the obligation of the defendant city with respect to these plaintiffs is contractual. This obligation is severable, *i.e.*, it is performed by making periodic payments, each being separate and distinct from the other, and failure to pay each giving rise to a

---

[1] January 1, 1964.

separate cause of action although they all arise from a single agreement. Thus, after January 1, 1964, failure to pay each annuity payment creates a cause of action the moment it becomes payable, and each cause of action is distinct from the cause adjudicated in Morrison.

Payments prior to January 1, 1964, but subsequent to January 31, 1961, also give rise to separate causes of action which may be sued upon despite the Morrison judgment. It is true that prior to the effective date of the 1963 Constitution, municipal retirement systems did not have a contractual status. *Brown* v. *City of Highland Park* (1948), 320 Mich 108. However, whether a new cause of action will arise does not depend upon there being a contractual obligation. Rather, the feature which gives rise to several distinct causes of action is the severability of the obligation, regardless of whether that obligation is contractual or otherwise. The city, by enacting a retirement system, obligated itself to pay according to the provisions of that system until it was either altered or deleted. *Brown, supra,* did not decide that municipal employees have no rights at all. It only held that the rights to an annuity upon retirement may be abrogated by the city. Until the system is altered, however, employees may expect to receive their pensions under existing charter provisions and they may resort to the courts for enforcement of their rights. In its brief, the defendant city has quite proudly stated that there has been no change in the charter provisions relating to retirement annuities. That being the case, these plaintiffs are only attempting to enforce existing rights. The rights and obligations are severable and therefore give rise to distinct causes of action. Because the

cause of action in the instant case is different from that settled in Morrison, only the issues common to both cases are *res judicata*.

According to the majority opinion, the matter of longevity pay was in issue in the Morrison case and is therefore foreclosed from further adjudication. Such a conclusion is not consistent with the record. The only support mustered for this statement is the opinion of the trial judge in the instant proceedings and an affidavit of an employee of the defendant city. Such authority is not at all compelling and is wholly irrelevant. The statement by the lower court in the present case that longevity pay was considered in Morrison has no legal effect because the Morrison judgment speaks for itself. An examination of the Morrison Case itself is the only reliable criterion for determining what was or was not in issue. Judge Gillis quite candidly admits that the matter of longevity pay was never mentioned by the court in Morrison. Since the issue was never considered, it is obvious that it was not a part of the case. Moreover, considering the extreme thoroughness of the Morrison decision, the omission cannot be written off as a mere inadvertence. Therefore, because the issue of longevity pay was not an issue in Morrison, that case is not *res judicata* and these plaintiffs have a right to fully litigate their claims in this regard.

This Court should not lose sight of the fact that longevity pay is a significant factor in determining the pension rights of petitioners.

"The primary purpose of the fluctuating pension plan * * * is to guarantee the pensioner or his widow, a fairly constant standard of living despite the inflationary tendencies of the economy and to maintain equality of position between the retired member and the person currently holding the rank attained by the pensioner before his retirement."

*Abbott* v. *City of Los Angeles* (1960), 178 Cal App 2d
204, 215, 216, 3 Cal Rptr 127.

Defendant argues in its brief that the matter of
longevity pay has been sufficiently accounted for by
including it in the computation of each pensioner's
average final compensation. First, this would have
no effect upon those who retired before the longevity
pay plan went into effect; second, to the extent that
this inclusion will possibly increase the size of the
denominator of the fraction used to determine the
retirement rates, it is not consistent with the fluc-
tuating benefit provision of the city charter because
it will result in a lower retirement ratio than would
otherwise be the case if there were no inclusion.
Moreover, the issue is whether appellants' pensions
should be increased in accordance with the afore-
mentioned purpose of the fluctuating benefit provi-
sion to reflect increases in longevity payments made
to those currently employed by defendant. Defend-
ant's argument does not face this issue, and, as noted
above, the judgment in Morrison is silent on the
point.

Plaintiffs also claim that the defendant is using
the wrong formula to determine the amount that each
member of plaintiff association should receive as his
retirement annuity. Since the formula was a matter
in issue in Morrison, it cannot now be relitigated.
However, the plaintiffs are not thereby foreclosed
from adjudicating the issue of whether the formula,
as determined by the Morrison decision, has been
correctly applied by defendant to payments made
since January 31, 1961, and whether the payments
made since January 1, 1964, have been consistent
with the charter provisions of the city of Dearborn.

In the footnote the computations of the annuity
of Arthur B. Theisen are included in this opinion
as an illustration of the disputed application of the

formula.[2] According to the formula, set forth in a footnote to the majority opinion, the first step is the ascertainment of the employee's average final compensation. Both parties agree that as to Mr. Theisen, this figure is $6,082.95, and it includes longevity pay paid to the employee. The second step

[2]    *ARTHUR B. THEISEN—POLICE LIEUTENANT*

Retired 7-16-57

*Defendant's Computation*

1) AFC—$6,082.95 (Includes Longevity)

2) Formula—
$$\frac{AFC}{\quad} \times \frac{Service}{\quad} = \frac{OA}{\quad}$$
$$\$6,082.95 \times 1/50 \times 23 \text{ yrs } 6 \text{ mos} = \$2,859.00$$

3) RR $= \dfrac{OA}{AFC}$

$2,859.00 ÷ $6,474.00* = 44.161%    *OR*

$$\frac{2859.}{6474. + 260. \text{ at } 7\text{-}16\text{-}57} = \frac{2859.}{6734.} = 42.456\%$$
(salary)  (long.)

4) Present Total Spread

| | MCR | Longevity | TOTAL |
|---|---|---|---|
| | $7,828.00 | $287.00 | $8,115.00 |
| | Total Spread | (Retirement Ratio) | |

5) Proposed by Thomson
(claimed by defendant)    $8,115.00 × 42.456% = $3,445.30
Paid by City            $7,828.00 × 44.161% = $3,456.92

$ 11.62

*Plaintiffs' Computation*

1) AFC—$6,082.95 (Includes Longevity)

2) Formula—
$$\frac{AFC}{\quad} \times \frac{Service}{\quad} = \frac{OA}{\quad}$$
$$\$6,082.95 \times 1/50 \times 23\text{-}1/2 \text{ yrs} = \$2,859.00$$

3) RR $= \dfrac{OA}{AFC}$

$2,859.00 ÷ $6,082.95 = 47%

4) Present Total Spread

| | MCR | Longevity | TOTAL |
|---|---|---|---|
| | $7,828.00 | $287.00 | $8,115.00 |
| | Total Spread | (Retirement Ratio) | |

5)
$8,115.00 × 47%    = $3,814.05

KEY

AFC—Average Final Compensation
MCR—Maximum Class Rate
RR —Retirement Ratio        * Max. for Police Lt.
OA —Original Annuity            at 7-16-57

in the formula, set forth on the second line of each computation submitted by the parties, is a determination of the employee's service retirement annuity. This is the annuity to which the employee is entitled immediately upon his retirement. Once again, both parties agree on the figure, which is $2,859.

The third step involves the disputed fluctuating benefit provision of the city charter. The result of this computation is expressed as a percentage and this figure is applied to all wage increases given to active employees subsequent to the date of retirement. For example, suppose a hypothetical employee named Mr. B retired on January 1, 1958. Assume also that his retirement ratio, the percentage arrived at by computing the third step of the formula, is figured on the date of his retirement as 50%. If active employees are given a $100 raise on January 1, 1959, the retirement ratio of Mr. B will be applied to that wage increase and his pension will be increased by 50% of the amount of the increase given to active employees. Thus, if his pension for 1958 was $3,000, in 1959 he will be entitled to an additional $50, or a total of $3050.

Turning to the case of Arthur Theisen, the plaintiffs submit the following computation of the third step in the formula. The service retirement annuity (step 2) is divided by the average final compensation (step 1), and the result is 47%. In other words, as active police lieutenants receive increases in their wages, Mr. Theisen's annuity should be increased by 47% of the amount of the increase received by the active police lieutenants.

In the defendant's computation, however, the service retirement annuity (step 2) is divided by the sum of the maximum class rate as of the date of retirement plus longevity pay as of the date of retirement.

The retirement ratio is thus reduced to 42.456% and the result is that the retired employee, Arthur Theisen, gets a smaller percentage of the increases given to active police lieutenants. In both plaintiffs' and defendant's computation, the dividend is the same figure, *i.e.*, $2,859. In the defendant's computation, the smaller quotient is achieved by using a larger divisor. Essentially, therefore, the point of contention is whether the service retirement annuity (step 2) should be divided by the average final compensation (step 1) as plaintiffs contend, or by the maximum class rate at the date of retirement plus longevity pay at the date of retirement, as defendant contends.

As to Mr. Theisen, the difference between the two computations of step 3 in the formula are obvious and not insubstantial. If the defendant's computation is used, his annuity is $3,456.92. According to plaintiffs' figures, the annuity should be $3,814.05— a difference of $357.13 on an annual basis. In this regard, it is interesting to note line 5 of the defendant's computation, attached hereto. This is what the defendant says will be the result if plantiffs' computations are followed. It is erroneous, because an examination of step 3 reveals that the 42.456% figure is arrived at by using the maximum class rate plus longevity as the divisor. Plaintiffs expressly controvert that contention.

Finally, as to the disputed third step in the formula, the maximum class rate should have no application. First, it does not have any relation to what the employee actually earned during his years of service. It is absurd to use a figure unrelated to an employee's actual earnings to determine the amount of his annuity where the annuity of each retiree is determined by a formula which depends on figures based on the employee's past earning record. The

court in Morrison stressed that each step in the computation was an individual one for each employee. Second, the term "maximum class rate" is not mentioned in either the opinion or judgment in the Morrison Case. The city has relied on the defense of *res judicata*. That doctrine, however, works both ways. The defendant should not be allowed to claim that plaintiffs are bound while it continues to use an application of the formula containing figures not authorized by the Morrison judgment. The city has no authority to use maximum class rate in computing benefits. By affirming the decision of the lower court, this Court is permitting the defendant to meddle with the formula as it chooses with no fear of having its actions reviewed by a higher authority.

Moreover, the 1963 Constitution makes the effectiveness of the formula after January 1, 1964, extremely doubtful. Article 9, § 24 of the 1963 Constitution gives municipal pension systems a contractual status, and the rights of employees in the system may not be impaired. *Campbell* v. *Judges' Retirement Board* (1966), 378 Mich 169. The rights of the retired employees of the city of Dearborn are set forth in the Dearborn city charter—these are the rights which may not be impaired. To the extent that the judgment in Morrison varies these rights, it is void after the effective date of the 1963 Constitution. When the rights of individuals are enlarged or changed by fundamental law, prior judicial pronouncements which diminish those rights are of no effect.

The second question raised, *i.e.,* do appellants have the right to see the financial records of defendant city, can be answered in the affirmative. Article 9, § 23 of the 1963 Michigan Constitution provides:

"All financial records, accountings, audit reports and other reports of public moneys shall be public records and open to inspection. A statement of all revenues and expenditures of public moneys shall be published and distributed annually, as provided by law."

If the records pertaining to retirement annuities are reports of public moneys, they are public records and open to inspection. Public moneys are defined as:

"All moneys which shall come into the hands of any officer of any county, or of any township, school district, city or village, or of any other municipal or public corporation within this state, pursuant to any provision of law authorizing such officer to collect or receive the same, shall be denominated public moneys within the meaning of this act." CL 1948, § 129.11 (Stat Ann 1961 Rev § 3.751).

The Michigan Supreme Court has held that not all funds held by governmental officers are public moneys. The case of *Pokorny* v. *County of Wayne* (1948), 322 Mich 10, defines public funds as funds belonging to the State or to any county or political subdivision of the State raised for governmental purposes. Under this definition, are retirement funds public moneys? Authorization for municipal retirement systems is found in CL 1948 and CLS 1961, § 38.551 *et seq.,* as last amended by PA 1963, No 57 (Stat Ann 1958 Rev and 1963 Cum Supp § 5.3375[1] *et seq.*). Part of the funds for the retirement system come from salary deductions, and part of the funds come from municipal appropriations. CLS 1961, § 38.559 (Stat Ann 1958 Rev § 5.3375[9]). At least part of the funds, then, are raised by defendant city, a governmental unit.

The final question is whether payment of municipal pensions is a governmental purpose. That it

is, is indicated by the following quotation from 40 Am Jur, Pensions, § 16.

"A judiciously administered pension fund is doubtless a potent agency in securing and retaining the services of the most faithful and efficient class of men connected with those arms of the municipal service in which every property owner and resident of the city is most vitally interested." Cited with approval in *O'Connell* v. *Dearborn Pension Board* (1952), 334 Mich 209, 215. See, also, 3 McQuillin, Municipal Corporations (3d ed), § 12.143.

The case at hand is concerned with pensions for policemen and firemen when they retire. Certainly no other group of public servants is more directly concerned with the safety and well-being of the general public. Their function is governmental, and if the incentive of generous pensions will enable municipalities to attract qualified personnel, payment of such annuities must certainly be a governmental function.

Further support for the right to inspect public records is found in *Nowack* v. *Auditor General* (1928), 243 Mich 200 (60 ALR 1351), wherein Mr. Justice McDonald at pp 204, 205 stated:

"Undoubtedly, it would be a great surprise to the citizens and taxpayers of Michigan to learn that the law denied them access to their own books for the purpose of seeing how their money was being expended and how their business was being conducted. There is no such law and never was either in this country or in England. Mr. Justice Morse was right in saying:

" 'I do not think that any common law ever obtained in this free government that would deny to the people thereof the right of free access to, and public inspection of, public records.' *Burton* v. *Tuite,* 78 Mich 363, 374 (7 LRA 73.) * * * *

" 'At common law, every person is entitled to the inspection, either personally or by his agent, of public records, including legislative, executive, and judicial records, provided he has an interest therein which is such that would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information.' 23 RCL p 160."

It is obvious that the appellants herein have a special interest in the records of the city, pertaining to the funds available and paid for pensions. Under *Nowack* v. *Auditor General, supra,* this is sufficient. The record discloses that plaintiffs requested the court to require defendant to furnish the necessary records for inspection. This is contained in paragraphs 4, 10, 12, and 16 of the complaint. Again, in their motion to set aside the judgment, plaintiffs requested the court to order production of the pertinent records.

In reviewing the record, I fail to find any foundation for the statement by Judge GILLIS that plaintiffs failed to raise this issue in the trial court. On the contrary, it was a part of this case from the very first. By summarily dismissing the claims of these plaintiffs this Court is allowing the defendant to place its own interpretation on the provisions of the Morrison judgment with the result that the plaintiffs are foreclosed from in any manner investigating or correcting the operations of their pension system.

I would vote to reverse and remand for further proceedings in accord with this opinion, with costs to appellants.