NOWACK *v.* AUDITOR GENERAL.

1. RECORDS—STATUTES—CONSTRUCTION—RIGHT TO INSPECT STATE PUBLIC RECORDS.

   1 Comp. Laws 1915, § 3448, providing for the inspection of records in the offices of the county, city, township, town, village, and school district, "or other public records," has no application to State public records; "other public records" referring to other public records in the offices specifically enumerated.

---

Mandamus as proper remedy to enforce citizens' right to inspect public records, see annotation in 64 L. R. A. 419; 18 R. C. L. 237.

2. SAME—RIGHT OF CITIZENS GENERALLY TO INSPECT STATE PUBLIC RECORDS ENFORCEABLE BY MANDAMUS BROUGHT BY ATTORNEY GENERAL.

> The people of a State have a common-law right to inspect State public documents and records, which right is based on the interest which citizens necessarily have in the matter to which the records relate, but it may be enforced only by mandamus proceedings brought by the attorney general.

3. SAME—INDIVIDUAL CITIZEN MUST SHOW SPECIAL INTEREST.

> In order for a citizen to enforce his individual right to inspect State public records he must show that he has a special interest not possessed by citizens generally.

4. SAME—CITIZEN HAMPERED AND INJURED IN BUSINESS BY REFUSAL TO INSPECT PUBLIC RECORDS HAS SPECIAL INTEREST ENTITLING HIM TO MANDAMUS.

> A citizen, who shows that he is manager and editor of a newspaper published and circulated in this State, and that he has been hampered and injured in his business by the refusal of the auditor general to allow him to inspect the records in his office relating to the expenditure of money authorized by Act No. 84, Pub. Acts 1927, incident to the entertainment of the annual conference of the governors of the several States in this State, which he desires to publish, has shown a special interest not possessed by citizens generally, entitling him to the aid of the court by writ of mandamus to enforce his right to such inspection.

Mandamus by Ed. A. Nowack to compel Oramel B. Fuller, auditor general, to permit an inspection of public records.     Submitted January 24, 1928.     (Calendar No. 33,394.)     Writ granted June 6, 1928.

*James A. Greene,* for plaintiff.

*William W. Potter,* Attorney General, and *M. M. Larmonth,* Assistant Attorney General, for defendant.

MCDONALD, J.     The plaintiff seeks a writ of mandamus to compel the defendant to permit him to inspect

certain public records in the office of the auditor general pertaining to the expenditure of public money authorized by Act No. 84, Pub. Acts 1927. The act in question empowered the State administrative board to pay out of the general fund a sum of money not to exceed $25,000 to defray the expenses incident to the entertainment of the 1927 annual conference of the governors of the several States at Mackinac Island, Michigan.

The petition shows that the plaintiff is a citizen of the United States and a resident and taxpayer in the State of Michigan; that he is the editor and publisher of a newspaper known as the Michigan Digest; that in good faith and for a public purpose he desires to inspect the records in question and publish in his paper a true and fair statement of the expenditure of public money by the State administrative board in defraying the expenses of the governors' conference; that defendant has denied him access to the records; and that his action in so doing has greatly hampered and injured plaintiff in his business.

The defendant excuses his refusal to permit the plaintiff to inspect the records in his office on the ground that there is no public interest in them, and that the plaintiff has no special interest and is not in law entitled to their inspection.

The plaintiff bases his right to inspection on both the common-law rule and statutory grant. In Michigan there is no statute providing for the inspection of State public records. The statute relied on by the plaintiff is section 3448, 1 Comp. Laws 1915, which reads in part as follows:

"The officers having the custody of any county, city, township, town, village, school district or other public records in this State shall furnish proper and reasonable facilities for the inspection and examination of the records and files in their respective offices," etc.

It is entitled:

"An act to facilitate the inspection of the records and files in the offices of the county, city, township, town, village and school districts in this State."

In specifically enumerating the various official records to which it is to apply, the statute must be construed as excluding from its effect all not expressly mentioned except those of the same general character. In *Brooks* v. *Cook*, 44 Mich. 617 (38 Am. Rep. 282), it is said:

"But it is a sensible and well understood rule of construction that when after an enumeration, the statute employs some general term to embrace other cases, the other cases must be understood to be cases of the same general character, sort or kind with those named."

In the title of the act in question, the operation of the statute is restricted to the public records of certain specified offices. The body of the act contains the same restriction but is followed by the words "other public records." Applying the rule of construction announced in *Brooks* v. *Cook, supra,* the term "other public records" refers to other public records in the offices specifically enumerated. This rule of construction excludes State public records from the operation of the statute.

In the absence of any statutory grant of inspection, the question in issue must be determined by a consideration of the general common-law principles relative to the right of citizens to inspect public documents and records. If there be any rule of the English common law that denies the public the right of access to public records, it is repugnant to the spirit of our democratic institutions. Ours is a government of the people. Every citizen rules. In Michigan the people elect by popular vote an auditor general. They prescribe his duties and pay his salary. He is required

to keep a true account of the expenditure of all public moneys and is answerable to the people for the faithful discharge of his duties.   He is their servant.   His official books and records are theirs.   Undoubtedly, it would be a great surprise to the citizens and taxpayers of Michigan to learn that the law denied them access to their own books for the purpose of seeing how their money was being expended and how their business was being conducted.   There is no such law and never was either in this country or in England.   Mr. Justice MORSE was right in saying:

"I do not think that any common law ever obtained in this free government that would deny to the people thereof the right of free access to, and public inspection of, public records."   *Burton* v. *Tuite*, 78 Mich. 363, 374 (7 L. R. A. 73).

There is no question as to the common-law right of the people at large to inspect public documents and records.   The right is based on the interest which citizens necessarily have in the matter to which the records relate.

There remains to be considered the common-law right of the individual citizen to inspect public records in which he has an interest in addition to his interest as a member of the general public.

In the elaborate note to *State, ex rel. Wellford,* v. *Williams,* 64 L. R. A. 419, where the English cases are discussed, it is said:

"In England, by the common law, the right of inspection is very guardedly granted by the courts after a consideration of the purpose for which it is desired. Thus it has been denied when the inspection was desired for private, rather than public purposes."

It will be noted by reference to the English cases that the courts were seldom called upon to enforce a private individual's right to inspect public documents and records except where the inspection was desired

to secure evidence in a pending or prospective suit.
Accordingly there was formulated the following
common-law doctrine:

"At common law, every person is entitled to the in-
spection, either personally or by his agent, of public
records, including legislative, executive, and judicial
records, provided he has an interest therein which is
such that would enable him to maintain or defend an
action for which the document or record sought can
furnish evidence or necessary information."        23 R.
C. L. p. 160.

See, also, 34 Cyc. p. 592.

When the procedure which was used for the enforce-
ment of the citizen's right to inspect public records
is recalled, it will appear that the doctrine above quoted
is not so much a denial of the right to inspect as it is
a declaration of the interest which a private individual
must have to avail himself of the remedy for the en-
forcement of his right.    At common law, the in-
dividual citizen as a member of the public had a right
to inspect, but, if inspection was refused, he could only
enforce his right by mandamus proceedings instituted
in his behalf by the attorney general.    He could not
sue out the writ in his own name.    Originally, the
writ of mandamus was a prerogative writ supposed
to proceed from the king himself who sat in his court
of king's bench; and it was formerly allowed only in
cases "affecting the sovereign, or the interests of the
public at large."    In time, the right to the writ was
extended to the private individual.    But mandamus is
based on interest, and the individual was not allowed
to sue out the writ in his own name unless he could
show some special interest to be enforced, that is, some
interest different from his interest as a member of
the public.    The courts held that, to entitle him to
the writ, his interest must be direct and tangible, and
that the right to inspect public records to secure evi-
dence for a lawsuit was such an interest.    By this

the courts did not mean that he had no right to inspect the books unless he wanted to use them as evidence but they meant that they would not issue the extraordinary writ of mandamus to enforce a private right of inspection unless the purpose was to use it in some pending or prospective suit.    The rule adopted amounts to a restriction on the citizen's remedy rather than on his rights.    As a citizen and taxpayer, he had the right of inspection, but, when he wanted to use it for private purposes, his right was restricted by the limited remedy which the courts allowed him for its enforcement.    He had a naked right for the enforcement of which the law provided no remedy.

This rule adopted by the English courts has no basis in reason or justice.    It is absurd to hold that a man could inspect the public records providing his purpose was to use the information in some litigation and to deny him the right to inspect for some other purpose that might be equally beneficial to him.    It does not protect all of his substantial rights and has not been received with general favor in this country.    In 18 R. C. L. p. 237, § 160, it is said:

"So in this country mandamus will lie to enforce a citizen's right to inspect public records, irrespective of whether it is sought in aid of pending or contemplated litigation with respect to his personal rights;" citing *Clement* v. *Graham*, 78 Vt. 290 (63 Atl. 146, Ann. Cas. 1913E, 1208) ; *State* v. *Williams*, 110 Tenn. 549 (75 S. W. 948, 64 L. R. A. 418) ; *Ferry* v. *Williams*, 41 N. J. Law, 332 (32 Am. Rep. 219).

See, also, *State* v. *King*, 154 Ind. 621 (57 N. E. 535).

In American cases, this question has arisen most frequently where there was a controversy over the right of a stockholder to inspect the books and records of his corporation.    The records of a corporation are public as to its stockholders.

"Inspection of books of public officers is subject to

the same restrictions as in the case of corporation books." 1 Greenleaf on Evidence (16th Ed.), § 475.

In discussing this question in *Foster* v. *White,* 86 Ala. 467 (6 South. 88), the court said:

"We do not assent to the narrow limits to which the jurisdiction is confined in *King* v. *Mer. Tailor's Co.,* 2 Barn. & Ad. 115, that is, that inspection must be shown to be necessary in reference to some specific dispute or question depending, in which the parties have an interest. The purpose may be entirely prospective, and an examination would be proper and legitimate, if the object is to obtain information as to the management and condition of the affairs of the corporation, in order to enable the shareholder to determine whether any and what steps are necessary to establish or maintain his rights; or in order to enable him to discharge his corporate duties. *Huylar* v. *Cragin Cattle Co.,* 40 N. J. Eq. 392. Ordinarily a mandamus will be awarded whenever an inspection and examination are necessary, for any reason, to protect the interests of the stockholders, present or prospective, and is not sought from idle curiosity, or for improper or unlawful purpose."

See, also, *Stone* v. *Kellogg,* 165 Ill. 192 (46 N. E. 222, 56 Am. St. Rep. 240) ; *In re Steinway,* 159 N. Y. 250 (53 N. E. 1103, 45 L. R. A. 461) ; *Bishop* v. *Walker,* 9 Mich. 328; *Woodworth* v. *National Bank,* 154 Mich. 459.

In *Woodworth* v. *National Bank,* the court held that, "in the absence of any statutory provision, a stockholder in a corporation has a common-law right, in a proper case and for a proper purpose, to inspect corporate records and documents" and quoted with approval from *Huylar* v. *Cragin Cattle Co., supra,* as follows:

"And they are entitled to such inspection, though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers."

So, in the instant case, the plaintiff as a citizen and taxpayer has a common-law right to inspect the public records in the auditor general's office to determine if the public money is being properly expended.   It is a right that belongs to his citizenship.   It is a right which he enjoys in common with all other citizens, a public right which can be enforced only by mandamus proceedings brought by the attorney general.

"It is not, and never has been, the policy of the law to permit private individuals the use of the writ of mandamus against public officers, except in cases where they had some special interest, not possessed by the citizens generally." *Smith* v. *City of Saginaw*, 81 Mich. 123.

See, also, *Home Telephone Co.* v. *Railroad Commission*, 174 Mich. 219; *Johnson* v. *Gibson*, 240 Mich. 515.

The plaintiff has not sought to enforce his rights through the office of the attorney general.   He has begun this suit in his own name.   In order to maintain it, he must show that he has a special interest not possessed by the citizens generally.   Apart from his public interest, his petition shows that he has been hampered and injured in his business by the refusal of the defendant to allow him to inspect the records in his office.   This is a special interest.   Is it a sufficient interest to entitle him to the aid of this court by writ of mandamus?   We think so.   He is the manager and editor of a newspaper.   It is published and circulated in Michigan.   He sells news to the people through the medium of his paper.   In a proper and lawful manner, he has a right to publish matters of public interest.   The citizens and taxpayers of this State are interested in knowing whether the public business is being properly managed.   By denying him access to the public records for the purpose of securing such information, he is deprived of legal rights for which he is entitled to redress by the writ of mandamus.

It is the plain duty of the auditor general to exhibit his official records to any citizen of Michigan who desires to inspect them for any proper and lawful purpose in circumstances not detrimental to the public business.

The writ will issue, if necessary.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, and SHARPE, JJ., concurred.   POTTER, J., did not sit.