For defendant: James M. Stockett.

James P. Copeland
vs.
Benjamin P. Moulton
et als.
} M. P. No. 1360.

October 28, 1931.

O'CONNELL, J. This is a petition for writ of mandamus, brought by James P. Copeland, a reporter of the Bridgeport Herald, against the members of the Board of Public Safety of the City of Providence, seeking to compel the respondents to permit him to have access to the records of the Police Department of said City of Providence, relating to the apprehension and arrest of persons charged with the violation of laws and the reports and descriptions relating to missing persons, the said petitioner in his capactiy of reporter and as an individual having been denied such access since August 25, 1931.

The respondents contest the peti-

tioner's right on two grounds, first, that the petition should be brought in the name of a properly authorized public officer, instead of as in this case, the petitioner's own name as relator, and secondly, that the records sought are not public records and that the petitioner has no right of access or inspection.

Upon the first point the respondents contend that the petitioner is barred from proceeding in his own name, because of the rule laid down in the case of *O'Brien* vs. *Board of Aldermen*, 18 R. I. 113. In this case a petition for writ of mandamus was denied on the ground that petitioner's personal interest in election had no legal character which the Court could recognize, and further that the petition was improperly brought because not brought by public officers. The Court said:

"There are many cases in which it has been stated that where the question is one of public right the people are regarded as the real party and the relator need not show any legal or special interest in the result; that it is enough that he, as a citizen, is interested in having the laws enforced. (Cases cited.) These cases hold that any citizen may be a relator. But it is to be observed that in all these cases the proceeding is in the name of the State, upon the relation of the citizen. If the doctrine of these cases is that the use of the name of the State is purely formal and that the intervention of a public officer is not necessary, and we were to adopt that doctrine, we should have no hesitation in sustaining the present petition; because, if the citizen has the right to use the name of the State upon his own relation, it is not substantially different from proceeding upon a petition in his own name. In *Portland Stone Ware Co.* vs. *Taylor*, 17 R. I. 33, it was held that a creditor was a proper applicant for the writ against a treasurer

who had been ordered to pay the petitioner's bill and, although the form of proceeding was not then questioned and the petitioner had a special interest, most of the cases cited above were referred to as examples of the extent to which some courts had gone in holding that the applicant need not show a special interest, even in seeking the performance of a public duty. In *Sanger* vs. *County Commissioners of Kennebec,* 25 Me. 291, it is laid down that a private individual can apply for mandamus only where he has some private or particular interest to be subserved or some particular right to be pursued or protected, independent of that which he holds in common with the public at large; and that it is for public officers, exclusively, to apply for the writ where public rights only are to be subserved. The same rule was held in *Heffner* vs. *Commonwealth,* 28 Pa. St. 108; *People* vs. *Regents of the University of Michigan,* 4 Mich. 98, with a qualification in case a public officer was absent or refused to act without good cause; *People* vs. *Inspectors and Agent of State Prison,* 4 Mich. 187. See also *Demarest* vs. *Wickham,* 63 N. Y. 320; *Doolittle* vs. *Supervisors of Broome County,* 18 N. Y. 155; *Wellington et al., Petitioners,* 16 Pick. 87; *Bates et al.* v. *Overseers of the Poor of Plymouth,* 14 Gray 163. We think the better reason, if not the weight of authority, is in favor of this rule. The burdens of public office are sufficiently serious in themselves to make the best men of almost every community reluctant to assume them; but if in addition, public officers are liable to be brought into court at the call of every citizen, who may think he has a grievance in the non-enforcement of a purely public duty, such burdens will be greatly enhanced. Public officers are appointed to enforce the laws. It is to be presumed that they will do their duty. If they omit to do it application can be made to the proper official to compel them to do it. But in the first instance the duty to move in the enforcement of a public right should be upon a public officer. This is not only more consistent with our form of government and more orderly in its method, but it prevents the annoyance and expense which would be incident to a rule allowing any citizen to be a prosecutor. Such a rule stands upon the ground of public policy and it has been so far approved in this State as to prevent an individual taxpayer from seeking to enjoin the collection of an alleged illegal tax, upon the ground of public policy as well as that of a private remedy. (Cases cited.) Also that a suit in equity cannot be brought by private persons to prevent an injury to a public right, but that such a suit must be brought by a properly authorized public officer. *Mowry* vs. *City of Providence,* 16 R. I. 422. In principle that case is identical with the case at bar. If individuals may be prosecutors and a suit should be brought by one, which should fail, it would be no bar to a suit by another who was not a party to the first one. Successive suits might therefore be brought by different persons even though the first suit should show that there was little or no prospect of success. The imposition of costs is not a sufficient legal regulator for such a possibility. Suits for the public should be placed in public and responsible hands. This is the rule in quo warranto, which is strongly analogous. But in quo warranto there is even a greater reason for allowing a private prosecutor, because, almost always, there is a contestant whose claim of right to the office in question determines the title of the respondent. Yet the practice of requiring the intervention of

a public officer in that proceeding is uniform and points significantly to the proper method to be adopted in other proceedings involving purely public duties.

"But it is claimed in this case that these petitioners, from the fact that they are candidates for office, have a personal interest which gives them a standing before the Court. We do not see that this is so. *They may indeed have a strong personal interest in the result, but not of that legal character which a Court can recognize.* The ballot law provides for the ascertainment of candidates simply for the purpose of printing the ballots. It does not give the candidate any new rights or place him in any substantially different position in regard to enforcing a public right from a candidate under the previous law. He still remains as one of the public simply, except that his name has been duly presented for printing upon the official ballot. We are therefore of opinion that these petitioners have *no such special interest*, distinct from the public at large, as to entitle them to petition in their own names, and that a petition for the enforcement of a purely public right or duty should be brought by the proper public officer, to whom it appertains to see to the enforcement of the right or duty in question."

It is a rule of very general application that where an individual has a special or peculiar interest of his own independent of that which he holds in common with the people generally, he is entitled to protect or enforce this right by mandamus and the fact that it may be the duty of the State or of the public, acting through its officers, to take action in the matter does not defeat the right of an individual having a special interest to maintain the proceeding. Nevertheless, if an individual sues. not in behalf of the public, but solely in his own behalf, he must have a *special pecuniary interest* in the matter and a clear legal right to the relief asked, else the writ will not issue.

38 C. J. 842;

*Nowack* vs. *Fuller*, 243 Mich. 200; 219 N. W. 749; 60 A. L. R. 1351.

That there are exceptions to the general rule laid down in the O'Brien case, cited supra, was recognized in the language of that decision itself, where the Court in its conclusion uses this language:

"We are therefore of opinion that these petitioners have *no such special interest*, distinct from the public at large, as to entitle them to petition in their own names, and that a petition for the enforcement of a purely public right or duty should be brought by the proper public officer, to whom it appertains to see to the enforcement of the right or duty in question."

It is to be noted that the O'Brien case cited as authority for its position two early Michigan cases and that the Nowack case, 243 Mich, 200, cited above, in deciding that the petitioner could maintain mandamus in his own name, cited its own earlier cases on the general rule and held that the petitioner was not barred by those cases, but that he had a *pecuniary* and hence a *special interest* different from that held by the public generally and hence could maintain his action in his own name.

The Court in the Nowack case uses the following language:

"The plaintiff has not sought to enforce his right through the office of the Attorney General. He has begun this suit in his own name. In order to maintain it he must show that he has a special interest not possessed by the citizens generally. Apart from his public interest, his petition shows that he has been hampered and injured in his business by the refusal of the defendant to allow him to inspect the records in his of-

fice. *This is a special interest.* Is it a sufficient interest to entitle him to the aid of this Court by writ of mandamus? We think so. He is the manager and editor of a newspaper. It is published and circulated in Michigan. He sells news to the people through the medium of his paper. In a proper and lawful manner he has a right to publish matters of public interest. The citizens and taxpayers of this State are interested in knowing whether the public business is being properly managed. By denying him access to the public records for the purpose of securing such information, he is deprived of *legal rights* for which he is entitled to redress by the writ of mandamus."

This Court is of the opinion that the petitioner's case does not come within the classification as to the general rule as laid down in the O'Brien case but that it comes within the terms of the decision in the Nowack case and that the petitioner, having a special pecuniary interest, distinct from that of the general public, is entitled to institute his petition for writ of mandamus in his own name.

We come now to a consideration of the second ground of objection raised by the respondents, namely, that the records sought are not public records and hence the petitioner has no right of inspection.

The petitioner has not cited a single case, neither during the hearing nor in his brief later submitted, holding squarely that police records are public records subject to inspection and the Court is not aware of any authority holding such records to be public records.

In 53 C. J. 627, appears the following statement:

"Records that have been held not subject to public inspection are State secrets, such as diplomatic correspondence, *police records*, or communications made by voluntary informers."

In *People* vs. *Hartnett*, 131 Misc. (N. Y.) 75; 226 N. Y. S. 338, the Court said:

"Secrets of State such as diplomatic correspondence, records of the police, communications by voluntary informers, may be withheld from inspection even where a person directly interested is concerned. (*Matter of Egan.* 205 N. Y. 147; *Worthington* vs. *Scribner*, 109 Mass. 487 and cases cited.)"

In *State* vs. *Miller*, 204 Ala. 234, it was held that a jury roll was not a public record to be exposed to inspection by the general public because of public policy.

In many States, statutes have been enacted permitting inspection of records to which access could not have been had at common law. Although Wisconsin has such legislation, in the case of *State ex rel Spencer* vs. *Freedy*, 223 N. W. 861 (1929), mandamus was denied to petitioner seeking access to records of State Fire Marshal, altho statute permitted inspection of statistics of his office. The Court said:

"The manifest purpose of the Law is to apprehend and punish those who may be guilty of the crime of arson, and to discourage the burning of property for the purpose of recovering the insurance thereon. If the testimony of all persons taken in investigations conducted by the State Fire Marshal, or his deputies, for the purpose of discovering the origin of fires, were to be made *a matter of public record*, the attainment of the purposes of the law would be greatly embarrassed. * * * If such testimony as well as other information coming to the knowledge of the State Fire Marshal is subject to public inspection, it is subject to the inspection of the person who may be accused of the crime of arson as the result of such investigation.

*One accused of crime enjoys no right to an inspection of evidence relied upon by the public authorities for his conviction. Santry vs. State, 67 Wisc. 65; State ex rel Robertson vs. Steele, 117 Min. 384, Ann. Cas. 1913 D. 343."*

In *Round* vs. *Police Comm'r*, 197 Mass. 281, 83 N. E. 412, the petitioner in a mandamus proceeding sought to have access to police records relating to pawnbrokers. The Court denied the petition and held the records were not available for public inspection, saying:

"The only question presented by this case is whether the record of the transactions of a pawnbroker, required to be furnished to the licensing board once a week under Rev. Laws, c. 102, section 42, as amended by St. 1907, p. 160, c. 211, is a public record, to which all persons may have access, and of which they are entitled to be furnished with copies under Rev. Laws, c. 35, section 17.

"Without some good reason, we should not expect that all transactions between borrowers and pawnbrokers should be opened to the reading of the whole community by being made a part of the public records. We think it plain that the record to be furnished under St. 1907, p. 160, c. 211, is for the information and use of the licensing board, and not to be placed on file for the information of the public. Most of these boards are the same that appoint and control the police department, and one object of the requirement doubtless is to have a record of the doings of all pawnbrokers more readily accessible to the police departments than by a visit to the books in the hands of the pawnbrokers. Another object of the statute is to have before these licensing boards information that may be used in passing upon applications for renewal of licenses."

The latter case is not directly in point because the records were not made by the police department itself. They were, however, records which by law were submitted to it and of which the police department was the custodian, and which were kept in its files.

But the Court believes that the law laid down in the case of *State ex rel Spencer* vs. *Freedy*, cited above, and decided as recently as 1929, is entitled to great weight and approves the language thereof, which says: "One accused of crime enjoys no right to an inspection of evidence relied upon by the public authorities for his conviction." If the record sought in the instant case were to be considered as public records, then, as a member of the public, one arrested for any violation of law would be entitled to access to and inspection of them. This might seriously interfere with the proper administration of justice and enforcement of law.

The records sought are not those of convictions, but of apprehensions and arrests. Inspection of such records might cause serious embarrassment to innocent persons and the possible escape of those who were guilty. It would certainly seriously handicap and hamper those charged with the enforcement of law.

The Court is of the opinion that the records sought are kept for administrative purposes and for the more efficient handling of police department affairs, and that they are in no sense public records, to which the petitioner or the public generally has an absolute right of access or inspection. This includes the reports and descriptions of missing persons as well as the records relating to the apprehension and arrest of persons for the violation of laws.

In the opinion of the Court this decision in no way involves the freedom of the press. That question is not in issue here and the freedom of the press

is in no way either infringed or challenged. If the records sought are public records, the petitioner, the press and the public generally have the right of access and inspection. If they are not, neither the petitioner, the press nor the public generally has such rights of access and inspection. The press can still write as it wishes but it cannot as a matter of right inspect records which are not public records. It is not entitled to inspect records which are purely administrative.

The records sought are not in the opinion of the Court public records and no one may inspect them as a matter of right.

The evidence shows that inspection of these records has been permitted for a long period of years, but inspection as a matter of courtesy should not be confused with inspection as a matter of right. Whether the withdrawal of this privilege is wise or unwise is not a matter with which the Court is concerned, for the Court is concerned only with rights and duties and not with affairs of discretion. The latter are not usually matters of judicial consideration.

For the reasons above stated, the petition for a writ of mandamus is denied.

For petitioner: Curran, Hart, Gainer & Carr.

For respondents: Clifton I. Munroe.