*In re* BUCHANAN

Docket No. 85600. Submitted March 12, 1986, at Lansing. Decided
June 17, 1986.

Plaintiff, Sandra Buchanan, a member of the Burton City Council
and an investigation committee which was formed to examine
allegations of impropriety in the diversion program in the 67th
District Court, was denied access to the program's records by
its administrator, Patrick McDougal. Plaintiff thereafter sought
an administrative order from the district court granting access
to the files. The district court, following a hearing, ruled that
the files belonged to the City of Burton, and were not district
court files. The district court issued an order denying plaintiff's
request. The investigative committee was eventually disbanded.
However, plaintiff filed a complaint for superintending control
against the district court in the Genesee Circuit Court, seeking
an order from the circuit court commanding the district court
to make available to plaintiff and the general public all court
files of the district court. Both parties moved for summary
disposition. The circuit court, Earl E. Borradaile, J., ruled that:
(1) plaintiff's complaint for superintending control, rather than
an appeal from the district court, was the proper action by
plaintiff; (2) any writ of superintending control could only
control access to district court files; (3) the circuit court did not
know whether the diversion program files were district court
files; (4) since the city council disbanded the investigation
committee, plaintiff was not entitled to access to the files on the
basis of her committee membership; and (5) plaintiff, as a
council member, had no more right to see the files than anyone
else. Plaintiff appealed. *Held:*

    1. Michigan citizens have a common-law right of access to

References

Am Jur 2d, Records and Recording Laws § 15.

What constitutes legitimate research justifying inspection of state
or local public records not open to inspection by general public.
40 ALR4th 333.

Proof of public records kept or stored on electronic computing
equipment. 71 ALR3d 232.

Construction and application of 5 USCS § 552(b)(6) exempting from
disclosure personnel and medical files. 16 ALR Fed 516.

public records, subject to restrictions as enacted by the Legislature.

2. A person seeking to enforce his common-law right to inspect public records must show a special interest warranting receipt of the records requested.

3. In this case, no legislative restriction applied to the records sought by plaintiff, and plaintiff had a special interest in the records as a member of the city council and the investigation committee. However, plaintiff is only entitled to those files which reasonably pertain to the diversion program and the enforcement of city ordinances.

Reversed and remanded for issuance of an order of superintending control.

1. RECORDS — PUBLIC RECORDS — CITIZEN'S RIGHT OF INSPECTION.

Michigan citizens have a common-law right of access to public records; however, such right is subject to restrictions as enacted by the Legislature.

2. RECORDS — PUBLIC RECORDS — CITIZEN'S RIGHT OF INSPECTION.

A citizen, in order to enforce his individual right to inspect public records, must show that he has a special interest not possessed by citizens generally.

*David G. Moore,* for plaintiff.

*Gault, Davison, Bowers & Hill* (by *F. Robert Schmelzer*), for defendant.

Before: MACKENZIE, P.J., and ALLEN and G. W. CROCKETT, III,* JJ.

PER CURIAM. In this suit to compel the 67th District Court to allow public access to its files, plaintiff appeals as of right from an order of the Genesee Circuit Court entered June 6, 1985, granting summary judgment to defendant. We reverse in part.

The basic facts, set forth in plaintiff's deposition on the question of summary disposition, are not disputed. In November, 1983, plaintiff was elected

* Recorder's court judge, sitting on the Court of Appeals by assignment.

to a four-year term on the city council of Burton, Michigan. In February, 1984, the city council formed a committee to investigate allegations of political payoffs and favoritism in the misdemeanor diversion program. The diversion program is similar to a probation program except that a participant in the diversion program is never formally charged with a crime if he successfully completes the program. Patrick McDougal operated the program under a contract with the city council. In order to be eligible for the diversion program, one had to be recommended by the city attorney.

Both before and after the investigation committee was formed, the plaintiff asked Mr. McDougal for access to the diversion program files. When the plaintiff asked for access to the files before the investigation committee was formed, she asked out of curiosity because she had heard rumors of drunk drivers making payoffs to avoid criminal prosecution. After the committee had been formed, she and Councilwoman Barrera requested access to twelve individual files on people who had been placed in the diversion program. The plaintiff intended to learn the locations of the offenses, the Breathalyzer results, and whether the individuals had prior convictions. Mr. McDougal would not give them access.

On August 1, 1984, plaintiff applied to the presiding judge of the 67th District Court for an administrative order granting public access to the 67th District Court files. On August 10, 1984, an attorney, Jack Belzer, moved to intervene on grounds that confidences of his clients would be disclosed if the public were granted access to the district court files. On August 21, 1984, Judge Harry P. Newblatt heard oral arguments on the

plaintiff's motion for an administrative order and ruled that the diversion program files were City of Burton records, not court records. The court also ruled that the court files contained confidential matters that could not be made available to the general public, such as Law Enforcement Information Network reports. The court further ruled that the harm to the person put on diversion would outweigh any benefit from public inspection of the records. On September 4, 1984, the investigation committee, of which plaintiff was a member, was disbanded. On September 5, 1984, an order was issued denying the relief requested.

On September 19, 1984, plaintiff filed a complaint for superintending control in the Genesee Circuit Court seeking an order from the circuit court commanding the district court "to forthwith make available to plaintiff and the general public all court files of the 67th District Court." Both parties moved for summary disposition and arguments were heard on May 20, 1985. At this hearing before Judge Earl E. Borradaile, the parties argued whether the plaintiff was properly before the court, whether superintending control was the proper remedy, and whether the members of the public at large had a right of access to court files. Following the hearing, Judge Borradaile ruled that a writ of superintending control, rather than an appeal from the district court, was the proper form of action; that any writ of superintending control could only control access to district court records; that the court did not know whether diversion files were district court files; and that since the Burton City Council had disbanded the investigation committee, the plaintiff was not entitled to access to records based on her membership on the committee. The court also ruled that, as an individual member of the council, the plaintiff had no more right

to see the records than anyone else.

So, we're dealing with—most of these questions are ones of the same issue that *Midland Publishing Company* dealt with: that once it becomes a public trial, then there is the right to have access. But the court does not believe that any of the cases give the right to have access prior to the time that a case becomes a public trial, basically something that Justice CAVANAGH has said in *In re: Midland Publishing Company* [420 Mich 148; 362 NW2d 580 (1984)].

This court cannot find, based upon its review of the cases, that the general public, whether it be Ms. Buchanan or anyone else, has a right to go into a court as to a case that has not yet been tried in the public court and demand access to the records of the clerk keeping the records of that court.

If there were a showing in this case that the Burton City Council's special committee to investigate the actions of its city attorney, that committee still being in effect, and by due authorization from the city council as having acted by at least a majority voting and saying that they hereby requested the right of inspection in order to determine the actions of the city attorney. Then the court believes that the district court judge or judges at that particular time would have to review the action of the city commission as to whether in fact it did have a majority, and whether that was the proper interest that is detailed in all the cases to justify the judge authorizing the clerk of the court to permit access by that committee.

\* \* \*

Since it seems apparent to this court that the authority of the committee had ended at the time the request was made, this court cannot find that the petitioner in this case has the right to demand, as a matter [sic] of the city council, that she be

granted access to any and every file which she asks for.

In fact as merely one member, without a majority vote in the city council, the court doubts if any district judge, or any other judge for that matter, would have to give her access. But if she did show that she was a duly-constituted person, either as an individual or as the duly-authorized member of a committee, then the district judge would have the right, as the court notes the *Nixon* Supreme Court opinion [*Nixon v Warner Communications, Inc*, 435 US 589; 98 S Ct 1306; 55 L Ed 2d 570 (1978)] says, to, in that judge's discretion, determine if there should be the granting of access.

On June 6, 1985, the court entered an order denying plaintiff's motion for superintending control and granting defendant's counter-motion for an order of dismissal.

We think the respected trial judge stated the law concerning a citizen's right to access of court records too narrowly. Michigan has long recognized a citizen's common-law right of access to public records. As early as 1889, our Supreme Court in *Burton v Tuite*, 78 Mich 363; 44 NW 282 (1889), granted a private citizen, engaged in the abstract business in Detroit, the right to examine the records and files in the city treasurer's office in Detroit. In so doing, Justice MORSE, speaking for the Court, stated:

I can see no danger of great abuses or inconveniences likely to arise from the right to inspect, examine, or make note of public records, even if such right be granted to those who get their living by selling the information thus gained. The inconvenience to the office is guarded against by the statute, which authorizes the incumbent to make reasonable rules and regulations with reference to the inspection. And when abuses are shown there will no doubt be found by the Legislature or the

courts a remedy for them. It is plain to me that the Legislature intended to assert the right of all citizens, in the pursuit of a lawful business, to make such examinations of the public records in public offices as the necessity of their business might require, subject to such rules and restrictions as are reasonable and proper under the circumstances. [78 Mich 375-376.]

The citizen's broad right of access to court records announced in *Burton* has consistently been cited with approval in subsequent Michigan cases. In *Booth Newspapers, Inc v Muskegon Probate Judge,* 15 Mich App 203; 166 NW2d 546 (1968), this Court upheld the right of a newspaper reporter to look at the last will and testament of a recently deceased prominent citizen. In *Penokie v Michigan Technological University,* 93 Mich App 650, 662; 287 NW2d 304 (1979), this Court held that, in addition to the authorization provided by Michigan's Freedom of Information Act,[1] access to the name and salary or wage of each person employed by defendant university from 1970 to 1979 was granted to a private citizen under the common-law authority cited in *Burton* and in *Nowack v Auditor General,* 243 Mich 200; 219 NW 749 (1928). Further, in the most recent decision by this Court, *In re Midland Publishing Co, Inc,* 113 Mich App 55, 63; 317 NW2d 284 (1982), we stated:

Michigan has long recognized a common-law right to access to public records. *Burton v Tuite,* 78 Mich 363; 44 NW 282 (1889), *Nowack v Auditor General,* 243 Mich 200; 219 NW 749 (1928). However, since a common-law right is involved, the Legislature may restrict the general broad right of access to public records. See *Booth Newspapers, Inc v Muskegon Probate Judge,* 15 Mich App 203; 166 NW2d 546 (1968).

---

[1] MCL 15.240(4); MSA 4.1901(1)(4).

Plaintiff has not cited any legislative abridgment of this right, nor have we found any legislative action that would be applicable to the instant situation.

However, the common-law right of access to court records is not without limitation. It is not available to just any citizen. As explained at some length in *Nowack, supra,* the person seeking access to court records must show a special interest warranting receipt of the records requested.

> The plaintiff has not sought to enforce his rights through the office of the attorney general. He has begun this suit in his own name. In order to maintain it, he must show that he has a special interest not possessed by the citizens generally. Apart from his public interest, his petition shows that he has been hampered and injured in his business by the refusal of the defendant to allow him to inspect the records in his office. This is a special interest. Is it a sufficient interest to entitle him to the aid of this court by writ of mandamus? We think so. He is the manager and editor of a newspaper. It is published and circulated in Michigan. He sells news to the people through the medium of his paper. In a proper and lawful manner, he has a right to publish matters of public interest. The citizens and taxpayers of this State are interested in knowing whether the public business is being properly managed. By denying him access to the public records for the purpose of securing such information, he is deprived of legal rights for which he is entitled to redress by the writ of mandamus. It is the plain duty of the auditor general to exhibit his official records to any citizen of Michigan who desires to inspect them for any proper and lawful purpose in circumstances not detrimental to the public business. [243 Mich 208-209.]

See, also, *Blue Cross & Blue Shield of Michigan v*

*Ins Bureau,* 104 Mich App 113; 304 NW2d 499 (1981).

The trial court apparently felt that plaintiff lacked the "special interest" required under *Nowack* because the investigation committee of which plaintiff was a member had been disbanded and, in the absence of a showing that a majority of the members of the city council had voted to request inspection of the court records, plaintiff was without the special interest required to bring suit. We disagree.

At the time plaintiff first requested the records from Patrick McDougal, the committee was in existence. It was still in existence on August 1, 1984, when plaintiff applied to the 67th District Court for an order granting access to the files. Plaintiff was an elected member of the city council. She still remains a member of the council. As an elected member of the council, she had a public interest in seeing whether the diversion program was being administered properly and whether it should be continued under the same administrator. Clearly, plaintiff had, and continues to have, a special interest in inspecting the court records to the extent that they would reveal mismanagement of the diversion program.

However, plaintiff is not entitled to the broad relief requested. Both in her complaint and at oral argument on appeal, plaintiff requested that the judges and clerks of the 67th District Court be ordered to allow unlimited access to all of the files of the 67th District Court. In our opinion, access should be limited to those files which reasonably pertain to the diversion program and the enforcement of city ordinances. Further, as stated in *Booth Newspapers, Inc, supra,* pp 207-208, if the files contain documents which by law cannot be shown to Burton City Council members, such docu-

ments can be removed by the district court clerks before allowing plaintiff to review the files. Likewise, as indicated in *Burton, supra,* p 375, the district court should be allowed to reasonably regulate the time, place and manner of the inspection of the files.

Accordingly, the order of summary disposition to defendant is reversed and the matter is remanded to the trial court with instructions to issue an order of superintending control within the above described limitations.