Weaver, J.
(dissenting). Plaintiffs in this case seek information pursuant to the Freedom of Information Act (FOIA), MCL 15.231 et seq., regarding how the *234 Michigan High School Athletic Association, Inc. (MH-SAA), determines which alpine ski races and racers are sanctioned from or for participation. The MHSAA disqualified plaintiffs’ son from competing with his public high school ski team during the 2002 season because he skied in one race that the MHSAA did not sanction.
The question in this case is whether the MHSAA is a public body that must comply with the disclosure requirements of the FOIA. Until the revision of the public school code by 1995 PA 289, there was no dispute that the MHSAA was subject to the FOIA. However, the majority holds that the 1995 revision of the school code insulated the MHSAA from public scrutiny previously available under the FOIA. I disagree and would hold that the MHSAA is a public body subject to the FOIA because it is both created by and primarily funded by or through public school districts.
i
The FOIA was enacted to continue the common-law right Michigan citizens have traditionally possessed to access government documents. See Walen v Dep’t of Corrections, 443 Mich 240, 253; 505 NW2d 519 (1993) (Riley, J. concurring in part); Evening News Ass’n v Troy, 417 Mich 481, 494-495; 339 NW2d 421 (1983) (discussing Michigan’s established history of requiring public agency disclosure). As Nowack v Auditor General, 243 Mich 200, 203-204; 219 NW 749 (1928), explained:
If there be any rule of the English common law that denies the public the right of access to public records, it is repugnant to the spirit of our democratic institutions. Ours is a government of the people. Every citizen rules. ... Undoubtedly, it would be a great surprise to the citizens and taxpayers of Michigan to learn that the law denied *235 them access to their own books for the purpose of seeing how their money was being expended and how their business was being conducted. There is no such law and never was either in this country or in England. Mr. Justice MORSE was right in saying:
“I do not think that any common law ever obtained in this free government that would deny to the people thereof the right of free access to, and public inspection of, public records.” Burton v. Tuite, 78 Mich 363, 374 (7 LRA 73) [44 NW 282 (1889)].
There is no question as to the common-law right of the people at large to inspect public documents and records. The right is based on the interest which citizens necessarily have in the matter to which the records relate.
This right to access provides the policy foundation underlying the FOIA. “The FOIA was enacted to continue this tradition of openness.” Walen, supra at 254 (Riley, J.).
The FOIA specifically provides that
all persons ... are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process. [MCL 15.231(2).]
The FOIA subjects “public bodies” to its public records disclosure requirements. MCL 15.235. The FOIA provides several definitions of “public body,” any one of which subjects an entity to the FOIA’s public record disclosure requirements. MCL 15.232(d)(iv) defines one sort of public body as “[a]ny other body which is created by state or local authority or which is primarily funded by or through state or local authority.” I would hold that the MHSAA is a public body because it is both “created by state or local authority” and “primarily funded by or through state or local authority.”
*236 Statutory language is to be read according to its ordinary and generally accepted meaning. Tryc v Michigan Veterans’ Facility, 451 Mich 135; 545 NW2d 642 (1995). If the language at issue is plain and unambiguous, we assume the Legislature intended its plain meaning and enforce the statute as written. Lorencz v Ford Motor Co, 439 Mich 370, 376; 483 NW2d 844 (1992). It is appropriate to refer to a dictionary to discern a statute’s plain meaning. State ex rel Wayne Co Prosecuting Attorney v Levenberg, 406 Mich 455, 465-466; 280 NW2d 810 (1979).
ii
Public school districts are expressly listed as public bodies under the statute. MCL 15.232(d)(iii). Moreover, the provision of interscholastic athletics has long been and now remains a proper function of public school districts, and the MHSAA’s relationship with the public schools in the provision of interscholastic athletics is firmly established.
A
THE MHSAA IS “CREATED BY” SCHOOL DISTRICTS
Under 1923 PA 237, the superintendent of public instruction was delegated the authority to supervise and control interscholastic athletic activities. The MH-SAA was first organized in 1924 for the purpose of coordinating and regulating interscholastic athletic activities.[1] Within the first year of its creation, the MHSAA presented a “Suggested Set of Standards and Practices *237 of Athletic Administration.” Regarding these standards, the superintendent of public instruction wrote:
Any athletic program to be worth having at all must contribute something to the educational value to its board. To do that it must be the result of the cooperative effort on the part of the superintendent, principal, althletic director, and student body. Complete control of the program must remain in the school itself. Any set of standards and practices must guide all these various groups.[2]
Until 1972, the MHSAA was apparently “housed within the Michigan Department of Education, and its Executive Director was known as the ‘State Director of Athletics.’ ” Communities for Equity v Michigan High School Athletic Ass’n, 178 F Supp 2d 805, 810-811 (WD Mich, 2001). The MHSAA’s handbook, rules, and regulations were part of the Michigan Administrative Code. Id. at 811.
In 1972, the school code was amended and the authority over interscholastic athletics was moved from the State Board of Education to individual school districts. Id. The Legislature expressly provided that school districts could join “an organization, association or league which has as its object the promotion of sport. .. and regulation of athletic . . . contests .. . .” Former MCL 340.379. Although the statute did not expressly designate the MHSAA as the official organization for interscholastic athletics, it did provide that “An association established for the purpose of organizing and conducting athletic events, contests, or tournaments among schools shall be the official association of the state.” Id. (emphasis added). It has been assumed *238 that the Legislature was referencing the MHSAA. See Communities for Equity, supra at 811.
Also in 1972, the MHSAA reorganized as a private not-for-profit corporation. The MHSAA’s purpose remained essentially unchanged after 1972. As stated in the 1972 articles of incorporation, the MHSAA was intended
to create, establish and provide for, supervise and conduct interscholastic athletic programs throughout the state consistent with the educational values of the high school curriculums [sic]....[3]
As under the former law, membership in the MHSAA was voluntary. Nevertheless, once a school district joins the MHSAA, it was and is bound by the MHSAA’s rules.[4]
There is no express mention of athletics in the school code as revised in 1995. The law now simply authorizes school districts to “join organizations as part of performing the functions of the school district.” MCL 380.11a(4) (emphasis added). However, the Kevised School Code further provides that the powers of school districts are not diminished “[ujnless expressly provided in the amendatory act. . . .” MCL 380.11a(9). *239 Thus, it can be concluded that the provision of athletics remains a proper function of school districts. It is also undisputed that the MHSAA remains the primary statewide organization that coordinates the interscholastic athletics for public school districts in Michigan.[5]
Given this history, the majority’s suggestion that the MHSAA is “a wholly different organization from the entity that was at one time legislatively designated as the official organization for the regulation of interscholastic sports in Michigan and that was housed within the Michigan Department of Education,” ante at 230, is inaccurate. As noted above, the MHSAA was not expressly named in the statute as the “official” state interscholastic organization after 1972. Further, the majority suggests that the “voluntary” nature of membership in the MHSAA is a new reality under the 1995 Revised School Code. This is not true. Membership has always been and remains voluntary. At any point since 1924, a school district could decide to not participate in interscholastic athletics and to not join the MHSAA.
School districts allow the MHSAA to coordinate sports events because the MHSAA is the dominant statewide organization of interscholastic athletics, and failure to join and comply with the MHSAA rules would effectively prevent the schools from participating in interscholastic athletics. Moreover, the MHSAA’s written materials demonstrate that the MHSAA is intertwined with the school districts. Specifically included in the MHSAA’s eligibility guidelines are requirements that the student athlete passes at least twenty credit hours and not have been enrolled in more than eight semesters in high *240 school.[6] Thus, not only is the MHSAA involved in the athletic activities of the students, it also establishes rules concerning the scholastic performance of the student athletes.
As noted in Communities for Equity, supra at 811, the 1995 amendment of the Revised School Code, “resulted in no substantive changes in the structure or operation of the MHSAA or in its relationships with its member schools.” The MHSAA was created by school districts that came together in 1924 to organize interscholastic athletics, and the organization of interscholastic athletics remains the MHSAA’s purpose. When school districts join the MHSAA through annual resolutions passed by the school boards, they adopt the MHSAA’s constitution, by-laws, rules and regulations “as their own.”[7] Therefore, under the FOIA the MHSAA should be treated as a “public body” because it is “created by state or local authority.”
The United States Supreme Court case of Brentwood Academy v Tennessee Secondary School Athletic Ass’n, 531 US 288; 121 S Ct 924; 148 L Ed 2d 807 (2001), supports the conclusion that the MHSAA is a public body that was created by state or local authority. In Brentwood, the United States Supreme Court held that the Tennessee Secondary School Athletic Association (TSSAA) was a state actor subject to constitutional limitations. While it is unnecessary to decide whether the MHSAA is a state actor to determine whether the MHSAA is subject to the FOIA, the Brentwood Court’s discussion of the TSSAA is of interest and relevant to this case because of the TSSAA’s similarities to the MHSAA. In Brentwood, *241 the TSSAA, like the MHSAA, was a not-for-profit corporation that was formed to oversee the interscholastic sports programs among public and private high schools in the state. The TSSAA imposed sanctions against plaintiff Brentwood Academy based on recruiting violations. In finding that the TSSAA was a state actor, the United States Supreme Court noted that “the nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings ....” Id. at 298. Brentwood also noted the TSSAA’s membership consisted of predominantly public schools, its revenue came from its membership dues and gate receipts from tournaments held at member schools, state officials were given ex officio status on the legislative council, and TSSAA employees were eligible for the state employees retirement system. Id. at 298-300.[8] It is notable that before the United States Supreme Court in Brentwood *242 reversed the Sixth Circuit’s conclusion that the TSSAA was not a state actor, the MHSAA argued that it was “very similar in structure” to the TSSAA and “that the nature and function of the MHSAA is virtually identical to that of the TSSAA.” See Communities for Equity, supra at 846-847. To suggest that an entity like the MHSAA could be a state actor, but not also a “public body” under the FOIA would undercut the stated purpose of the FOIA that “ [a]ll persons ... are entitled to full and complete information regarding the affairs of government. .. .” MCL 15.231(2).
B
THE MHSAA IS PRIMARILY FUNDED BY OR THROUGH SCHOOL DISTRICTS
The MHSAA is “primarily funded” as a result of its relationship with the public school districts. The majority definition of “funded” as narrowly pertaining only to “the receipt of a governmental grant or subsidy,” ante at 224, 226-227, defies common sense. The majority’s definition originates in a Court of Appeals decision[9] that first cites a dictionary definition of “fund” (as a verb), and then skips to a synonym, “subsidize,” that the panel discovered in a thesaurus. Apparently preferring “subsidize” to “fund,” even though the term “fund” was *243 used by the Legislature,[10] the panel then turned to a dictionary definition of “subsidy” (a noun) and discovered that a “subsidy” is defined as “a direct financial aid furnished by a government.. . [or] any grant or contribution of money.” Thus, by mixing verbs and nouns and substituting words for those employed by the Legislature, the panel creatively narrowed “is... funded” under the statute to mean the “receipt of a government grant or subsidy.” While it is appropriate to refer to dictionary definitions to understand the ordinary meaning of words, it is not appropriate to pick and choose among synonyms that may only have “nearly the same” or “similar”[11] meaning and substitute those for the words specifically employed by the Legislature.
I would conclude, that a “fund” can be understood to be “money available for use” so that when something “is funded” it is provided for “by a fund,” i.e. by “money available for use . . . .” Webster’s New World Dictionary (3d ed). Michigan public schools represent eighty percent of the MHSAA’s membership and approximately ninety to ninety-five percent of the MHSAA’s funding is from gate receipts from postseason athletic tournaments for football and basketball involving public school teams. Without the voluntary participation of the public school districts in the MHSAA organized interscholastic athletic season and postseason tournaments, as well as the school districts’ relinquishment of the gate receipts to MHSAA, it would cease to exist because its primary source of money available for its use would disappear.
*244 However, the question remains whether the MHSAA’s gate receipt funding is derived “by or through” public school districts. There are many inapplicable definitions of the terms “by” and “through.” But in the context of MCL 15.232(d)(iv), the most applicable definition of “by” in Webster’s addresses the term as used to express permission or sanction. In that sense, “by” is-defined as “with the authority or sanction of [by your leave].”[12] The applicable definitions of “through” in Webster’s are “by means of [through her help]” and “as a result of; because of [done through error].”[13] Id.
Thus, the plain meaning approach to “by” or “through” in the context of the statute at issue is whether the gate receipts amount to funding that the MHSAA receives with the authority or sanction of the school districts or by means of, as a result of, or because of the school districts.[14] I would hold that because the MHSAA receives its primary funding as with the authority of (by) and as a result of (through) the voluntary membership of public school districts in the MHSAA and the school districts’ voluntary participation in the interscholastic athletic seasons and postseason tournaments organized by the MHSAA, the MHSAA is primarily *245 funded “by or through” the schools and is a public body under MCL 15.232(d)(iii) of the FOIA.
Rather than look at the plain meaning of the words at issue, the majority suggests that the terms “by” and “through” must refer to different kinds of governmental authority. The majority adopts the analysis of the Court of Appeals and concludes that “by” refers to an entity that directly distributes its financial resources to the disputed organization. The majority then says “through” refers to the disputed organization indirectly receiving funds through some action or decision of the governmental body. Ante at 226. However, to understand the statute, it is not necessary to engraft concepts of direct and indirect funding or to conclude that the Legislature intended to reference different kinds of governmental authority when it only used the term authority once. The majority’s approach defies the plain language of the statute and unduly constricts the definitions of “public body” and of “funded.”
In Brentwood, the United States Supreme Court addressed the nature of gate receipts received by a similar state school athletic organization for its organization and sponsorship of public school athletic tournaments and stated:
Unlike mere public buyers of contract services, whose payments for services rendered do not convert the service providers into public actors,... the schools here obtain membership in the service organization and give up sources of their own income to their collective association. The Association ... exercises the authority of the predominantly public schools to charge admission to their games; the Association does not receive this money from the schools, but enjoys the moneymaking capacity as its own. [Brentwood, supra at 299.]
*246 Like the TSSAA, the MHSAA is more than a public contractor exchanging payments for services. By collecting gate receipts at tournaments, the MHSAA enjoys the schools’ moneymaking capacity as its own.[15]
This underscores the conclusion that the MHSAA receives its primary funding “by or through” the schools’ authority. The majority argues that the MHSAA “creates its own ‘market,’ ” and stresses that without the MH-SAA’s effort “no revenue from tournament games would be generated for any entity, including MHSAA member schools.” Ante at 229. The majority thus concludes that the MHSAA is merely a service provider and that the gate receipts are simply fees paid for services.
However, as noted above, the MHSAA is not simply in a situation where the organization provides a particular service for a fee. True, the MHSAA does organize interscholastic seasons and postseason tournaments. It also provides medical insurance, publications, and training to its members. However, schools do not join the MHSAA or allow it to sell tickets to events featuring student athletes simply because the MHSAA provides medical insurance, publications, or training. As already explained, school districts allow the MHSAA to coordinate events and relinquish related gate receipts to the MHSAA because the MHSAA is the dominant statewide organization of interscholastic athletics, and failure to join and comply with MHSAA rules would effectively prevent the schools from participating in interscholastic athletics.
It should be noted that the MHSAA is distinguishable from ordinary service providers to the schools. The school districts have delegated the authority to the *247 MHSAA to make policy decisions. These decisions are within the proper function of school districts to regulate athletics, MCL 380.11a(4); MCL 380.11a(9), such as athletic eligibility and training, participation in outside sports activities and required scholastic achievement for participating athletes. This intertwinement between the MHSAA and the school districts makes the MHSAA subject to the FOIA where an ordinary service provider would not be.
in
CONCLUSION
It has been and remains the submission of public school districts to the rules and regulations of the MHSAA that allows the MHSAA to exist. It can thus be concluded that the MHSAA was created by the school districts. MCL 15.232(d)(iv). It is similarly by and through the MHSAA’s relationship with the schools that it may sell tickets for tournaments featuring public school athletes. It follows that the gate receipts the MHSAA receives for those events are received “by or through” the authority of the schools as those words are used in MCL 15.232(d)(iv). The purpose of the FOIA is to allow citizens to fully participate in the democratic process regarding the affairs of government and the official acts of those who represent them. MCL 15.231(2). The school districts have effectively delegated the responsibility for those official acts, as they pertain to school athletics, to the MHSAA by repeatedly adopting its rules as their own.
Thus, both to follow the language of the FOIA and remain true to the purpose behind its enactment, I would hold that the MHSAA is a public body that must comply with the disclosure requirements of the FOIA.
KELLY, J., concurred with WEAVER, J.

 Since the founding of the MHSAA the state superintendent of public instruction has been an ex-officio member of the Representative Council that governs the MHSAA. See, Lewis L. Forsythe, Athletics in Michigan High Schools—The First Hundred Years, (Prentice-Hall, Inc *237 1950), which documents the development of high school athletics and the creation of organizations to coordinate interscholastic athletics since 1848.

 Id. at 172.

 This description is from the mhsaa’s April 18, 1972, articles of incorporation.

 When a school district joins the MHSAA, it must annually adopt the MHSAA membership resolution. That resolution provides that the school district:
Accepts the Constitution and By-Laws of [MHSAA] and adopts as its own the rules, regulations and interpretations (as minimum standards), as published in the current HANDBOOK and qualifications as published in the BULLETIN as the governing code under which the said school(s) shall conduct its program of interscholastic activities and agrees to primary enforcement of said rules, regulations, interpretations and qualifications. In addition, it is hereby agreed that schools which host or participate in the association’s meets and tournaments shall follow and enforce all tournament policies and procedures.

 The MHSAA’s comprehensive control that it has retained over interscholastic athletics is reviewed in Communities for Equity, supra at 810-814.

 <http://www.mhsaa.com/administration/eligibility.pdf> (accessed July 28, 2004).

 As we have noted before, the MHSAA is a “creature of its members.” Kirby v MHSAA, 459 Mich 23, 39 n 17; 585 NW2d 290 (1998).

 Interestingly, the United States District Court, in Communities for Equity, supra subsequently held that, under the United States Supreme Court decision in Brentwood, the facts presented in Communities for Equity necessitated a finding that the MHSSA was a state actor. Id. at 847.
The United States District Court explained:
The purpose of the MHSAA — to create, establish and provide for, supervise and conduct interscholastic athletic programs throughout the state — is virtually the same as its Tennessee counterpart. The MHSAA has a membership of predominantly public schools and almost every eligible public school belongs. Its revenue is derived from gate receipts from tournaments held at member schools and broadcast fees, among other items, revenues to which schools would otherwise be entitled. The membership of the MHSAA’s Representative Council includes a representative of the superintendent of education and is comprised of mostly public school employees acting as representatives for their schools. Some MHSAA employees continue to be eligible for participation in the state employee retirement system. Moreover, the MHSAA exercises adjudicative power over the schools with its ability to investigate and determine rules violations and resultant sanctions.
*242 Just as the Supreme Court recognized, that a mechanism is required to implement interscholastic sports schedules and competition rules governing Tennessee’s schools, that mechanism in the State of Michigan takes the form of public school officials acting together under the auspices of the MHSAA. [id. at 847.]

 For its definition of “funded,” the majority relies on an interpretation conceived in State Defender Union Employees v Legal Aid and Defender Ass’n of Detroit, 230 Mich App 426; 584 NW2d 359 (1998), a decision written by the author of the majority opinion while serving on the Court of Appeals.

 Apparently the panel also preferred “subsidize” over other common synonyms of “fund” such as “endow” or “finance.” Webster’s Collegiate Thesaurus (1976).

 Webster’s, supra, defining “synonym” and “synonymous.”

 In Black’s Law Dictionary (6th ed), “by” is similarly defined as “[t]hrough the means, act, agency or instrumentality of.”

 In Black’s, supra, “through” is defined similarly as “[b]y means of, in consequence of, by reason of [and] [b]y the intermediary of; in the name or as the agent of; by the agency of; because of.”

 The terms “by” and “through” are often combined in the phrase “by and through.” Garner, A Dictionary of Modern Legal Usage (2d ed), described “by and through” as “typical LEGALESE” that “can be replaced with either by or through.” MCL 8.3a (emphasis added) provides that “[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language ... .” Thus, the majority’s assertion that these words in this context must each be accorded “[its] unique meanin[g],” ante at 226, is incorrect.

 Justice Thomas’s dissenting perspective regarding the relationship of the association to the schools in Brentwood did not prevail. The majority’s citation of it, ante at 227 n 2, is not persuasive.